IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and ARTHUR H. BUNTE, JR., as Trustee, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 15-cv-11586 |
| v. | ) ) ) | Judge: James B. Zagel |
| K&M EQUIPMENT, INC., an Illinois corporation, and MIDWEST UNDERGROUND, INC., an Illinois corporation, | ) ) ) ) ) ) | Magistrate Judge: Michael Mason |
| Defendants. | ) | |

## JOINT STIPULATED FACTS

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund (the "Fund") and Arthur H. Bunte, Jr., as Trustee (collectively, "Plaintiffs"), and Defendants K&M Equipment, Inc. ("K&M") and Midwest Underground, Inc. ("Midwest") (collectively, "Defendants") hereby stipulate and agree to the following facts:

1. The Fund is a multiemployer pension plan within the meaning of the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002(37) and 1301(a)(3).

2. Arthur H. Bunte, Jr. is a trustee of the Fund and its plan sponsor within the meaning of 29 U.S.C. § 1301(a)(10).

3. Midwest is an Illinois corporation with its principal office located in East Moline, Illinois.

4. K&M is an Illinois corporation with its principal office located in East Moline, Illinois.

1

5. At all relevant times, Midwest & K&M were a group of trades or businesses under common control (the "Midwest Controlled Group") and therefore constituted a single employer within the meaning of Title IV of ERISA, 29 U.S.C. § 1301(b)(1).

6. The Midwest Controlled Group is an "employer" for purposes of the determination and assessment of withdrawal liability under Title IV of ERISA.

7. At all relevant times, Midwest was a member of the Pipe Line Contractors Association ("PLCA"). The PLCA, on behalf of its members, negotiates and administers industry-wide labor agreements with various unions, including the International Brotherhood of Teamsters ("IBT"). The industry-wide collective bargaining agreement between PLCA and IBT is known as the National Pipe Line Agreement ("NPLA").

8. Midwest was and is currently bound by the NPLA. Certain previously-applicable NPLAs contained provisions requiring employers performing work under the NPLA, including but not limited to Midwest, to contribute to the Fund for certain employees pursuant to the terms of the applicable NPLA.

9. On November 15, 2011, the PLCA entered into an agreement with the IBT (the "Agreement"). The Agreement purported to terminate the obligation of employers performing work under the NPLA, including but not limited to Midwest, to contribute to the Fund under the NPLA. A true and correct copy of the Agreement is attached as Exhibit A.

10. Midwest, along with other PLCA members, sent written notice to the Fund on November 16, 2011, stating that Midwest's obligation to contribute to the Fund under the NPLA terminated as of November 15, 2011. A true and correct copy of the relevant excerpts of the notice sent by Midwest to the Fund is attached as Exhibit B.

11. The PLCA sent eight follow-up letters to the Fund between November 28, 2011 and the end of the calendar year. These letters each asked if PLCA's members (including but not limited to Midwest) needed to take any further action to ensure that each employer's termination of its obligation to contribute to the Fund under the NPLA was effective.

12. In a letter dated January 30, 2012, the Fund informed the IBT that it had determined that PLCA members (including but not limited to Midwest) had not effectively terminated their obligation to contribute to the Fund as of November 15, 2011. A true and correct copy of the January 30, 2012 letter is attached as Exhibit C.

13. On March 15, 2012, PLCA member Michels Corporation filed suit in the U.S. District Court against the Fund in a case titled *Michels Corp. et al v. Central States, Southeast and Southwest Areas Pension Fund, et al.*, 1:12-cv-04144, seeking a declaratory judgment that its obligation to contribute to the Fund under the NPLA ceased on November 15, 2011.

14. On July 26, 2012, the PLCA, on behalf of its members, including Midwest, moved to intervene in the litigation seeking a declaratory judgment that all PLCA members similarly ceased to have an obligation to contribute to the Fund under the NPLA as of November 15, 2011.

15. The Fund denied the PLCA's and Michel Corp.'s contention that the obligation under the NPLA to contribute to the Fund ceased on November 15, 2011.

16. On August 1, 2012, the Fund filed counterclaims against 35 PLCA members, including Midwest, seeking to collect contributions allegedly owed to the Fund from such PLCA members for work performed under the NPLA after November 15, 2011.

17. The Fund determined that on or about December 31, 2012, the Midwest Controlled Group effected a "partial withdrawal," as that term is defined in 29 U.S.C. §

3

1385(a)(2), as a result of the partial cessation of the Midwest Controlled Group's obligation to contribute to the Fund.

18. As a result of the Fund's determination of the Midwest Controlled Group's partial withdrawal referenced in paragraph 17, the Fund determined that the Midwest Controlled Group incurred withdrawal liability to the Fund in the principal amount of $1,961,713.07, which determination was made under 29 U.S.C. § 1381(b) (the "Assessment" or "Withdrawal Liability").

19. In a letter dated March 14, 2014, the Fund issued a notice and demand for payment of the Withdrawal Liability to the Midwest Controlled Group in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1) (the "Notice and Demand"). A true and correct copy of the Notice and Demand is attached as Exhibit D. The Notice and Demand was received by Midwest on or about March 17, 2014.

20. As of the date of the Notice and Demand and at all relevant times thereafter, Midwest was a party in *Michels Corp.* as a counter-defendant and/or through its status as a member of the PLCA.

21. On September 2, 2015, the U.S. Court of Appeals for the Seventh Circuit issued its decision in *Michels Corp.* 800 F.3d 411 (7th Cir. 2015). The Seventh Circuit concluded that "the collective bargaining agreement between the PLCA and the Union expired . . . on January 31, 2011. Until November of that year, it was followed by a series of separate agreements, each of which carried the terms of the CBA forward." "The interim agreement that took effect on November 15, 2011 . . . eliminated the employers' duty to contribute to the [Fund]. . . ."

22. In a letter dated October 30, 2015, the Midwest Controlled Group submitted a request for review to the Fund under 29 U.S.C. § 1399(b)(2)(A) asserting, among other grounds,

4

that the 2012 date of withdrawal used by the Fund to calculate the Withdrawal Liability amount was erroneous and in direct conflict with the clear and unambiguous holding of the Seventh Circuit in *Michels Corp*. A true and correct copy of the October 30, 2015 request for review is attached as Exhibit E.

23. In a letter dated October 30, 2015, the Midwest Controlled Group demanded arbitration pursuant to 29 U.S.C. § 1401, 29 C.F.R. § 4221, Section 7 of the American Arbitration Association's ("AAA") Rules for Withdrawal Liability Disputes, and the withdrawal liability rules of the Fund in a case titled *Midwest Underground Inc. et al v. Central States, Se. & Sw. Areas Pension Fund*, AAA No. 01-15-000504525. A true and correct copy of the October 30, 2015 demand for arbitration is attached as Exhibit F. Arbitrator Norman Brand was appointed to serve as the arbitrator and the case has been stayed pending the outcome of this litigation.

24. Prior to the Midwest Controlled Group's demand for arbitration referenced in paragraph 23, 26 other members of the PLCA, which were also parties to *Michels Corp.*, had demanded arbitration within a 60-day period after the earlier of (A) the date of notification to the employer under section 4219(b)(2)(B) of ERISA, or (B) 120 days after the date of the employer's request under section 4219(b)(2)(A) or ERISA.

25. On October 28, 2015, Midwest Controlled Group retained undersigned counsel for purposes of challenging the Withdrawal Liability. Undersigned counsel is also counsel of record in 26 of the arbitrations involving certain other PLCA members referenced in paragraph 24 including eight such cases pending before Arbitrator Brand. Undersigned counsel and the Fund jointly agreed to stay all of the arbitrations referenced in paragraph 24 pending the outcome of the *Michels Corp* case because a "central issue in dispute" in the arbitrations was the same issue in dispute in *Michels Corp*. A true and correct copy of the parties' joint request dated

March 6, 2014 to stay arbitrations pending before Arbitrator Brand is attached as Exhibit G. On October 30, 2015, the Midwest Controlled Group submitted its demand for arbitration concerning the Notice and Demand.

26. On December 23, 2015, Plaintiffs filed this action seeking an injunction and declaratory judgment under the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1001 *et seq.*, and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. Plaintiffs assert that Defendants did not timely initiate arbitration for their claims and defenses relating to the Fund's assessment of withdrawal liability because they failed to comply with 29 U.S.C. § 1401(a)(1), 29 C.F.R. §§ 4221.3(c), 4221.14, the AAA Multiemployer Pension Plan Arbitration Rules for Withdrawal Liability Disputes, and Appendix E of the Fund's Plan Document.

27. Defendants contend that Plaintiffs used an incorrect withdrawal date in their Assessment of withdrawal liability and that Defendants' deadline for arbitrating this issue was equitably tolled by Plaintiffs' and Defendants' litigation of this identical issue in *Michels Corp.* Defendants also deny that the Fund is entitled to any relief relating to the arbitration.

28. Plaintiffs assert that the deadline to initiate arbitration was not equitably tolled and, as a result, Defendants have no right to assert their claims or defenses in arbitration.

29. The sole legal issue in this action is whether Defendants timely initiated arbitration of their claims and defenses relating to the Fund's withdrawal liability assessment under 29 U.S.C. § 1401(a)(1), 29 C.F.R. §§ 4221.3(c), 4221.14, the AAA Multiemployer Pension Plan Arbitration Rules for Withdrawal Liability Disputes, and Appendix E of the Fund's Plan Document, and, specifically, whether Defendants' deadline to initiate the statutory review and arbitration process was equitably tolled during the pendency of the litigation in *Michels Corp.*

Dated: March 29, 2016 /s/ Eric D. Field
Eric D. Field (IL State Bar No. 6255922)
Elizabeth A. Cyr (*pro hac vice*)
Andrew R. Turnbull (*pro hac vice*)
Allison S. Papadopoulos (*pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD, LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
Telephone: 202.887.4000
Facsimile: 202.778.4288
efield@akingump.com

Attorneys for Defendants.

/s/ with consent of Brandon A. Buyers
Brandon A. Buyers
CENTRAL STATES FUNDS LAW DEPARTMENT
9377 West Higgins Road, 10th Floor
Rosemont, Illinois 60018
Telephone: 847.939.2464
bbuyers@centralstatesfunds.org

Attorney for Plaintiffs.