**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND | ) | |
| SOUTHWEST AREAS PENSION FUND; | ) | |
| and ARTHUR H. BUNTE, Jr., as Trustee, | ) | |
| | ) | |
| *Plaintiffs,* | ) | Case No. 15-cv-11586 |
| | ) | |
| v. | ) | Judge James B. Zagel |
| | ) | |
| K & M EQUIPMENT, INC., an Illinois | ) | Magistrate Judge Michael Mason |
| corporation, and MIDWEST UNDERGROUND, | ) | |
| INC., an Illinois corporation, | ) | |
| | ) | |
| *Defendants.* | ) | |

## CENTRAL STATES' LOCAL RULE 56.1(a)(3) STATEMENT OF MATERIAL FACTS

NOW COME Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund") and Arthur H. Bunte, Jr., trustee (collectively, "Central States"), by and through their undersigned counsel, and hereby submit their Local Rule 56.1(a)(3) Statement of Material Facts as to which Central States contends there is no genuine issue and that entitle them to judgment as a matter of law.

### A.      The Parties

1.      The Pension Fund is a multiemployer pension plan within the meaning of the Employee Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002(37) and 1301(a)(3). (Joint Stipulated Facts, Dkt. 26-1 at ¶ 1, attached hereto as Exhibit A, hereinafter "Ex. A, JSF. ¶ __.")

2.      Plaintiff Arthur H. Bunte, Jr. is a present trustee of the Pension Fund and its plan sponsor within the meaning of 29 U.S.C. § 1301(a)(10). (Ex. A, JSF. ¶ 2.)

3.     Defendants K&M Equipment, Inc. ("K&M") and Midwest Underground, Inc. ("Midwest") are corporations organized under the laws of the State of Illinois. (Ex. A, JSF. ¶ 3-4.)

4.     At all relevant times, K&M and Midwest were a group of trades or businesses under common control (the "Midwest Controlled Group") and therefore constituted a single employer within the meaning of Title IV of ERISA, 29 U.S.C. § 1301(b)(1). (Ex. A, JSF. ¶ 5.) Accordingly, the Midwest Controlled Group is an "employer" for purposes of the determination and assessment of withdrawal liability under Title IV of ERISA. (Ex. A, JSF. ¶ 6.)

**B.     Jurisdiction and Venue**

5.     This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq*. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. (Defs.' Answer to Pl.'s Compl., Dkt. 11 at ¶ 1, hereinafter "Answer, ¶ __.") This Court has jurisdiction over this action under 29 U.S.C. §§ 1132(e), 1132(f) and 1451(c). (Answer, ¶ 8.)

6.     The Pension Fund is administered at its principal place of business in Rosemont, Illinois. (Answer, ¶ 11.) Accordingly, venue is appropriate in this Court under 29 U.S.C. §§ 1132(e)(2) and 4301(d). (Answer, ¶ 11.)

**C.     The Midwest Controlled Group's participation in the Pension Fund and in the *Michels Corp.* litigation**

7.     At all relevant times, Midwest was a member of the Pipe Line Contractors Association ("PLCA"). (Ex. A, JSF. ¶ 7.) The PLCA, on behalf of its members, negotiates and administers industry-wide labor agreements with various unions, including the International Brotherhood of Teamsters ("IBT"). (Ex. A, JSF. ¶ 7.) The industry-wide collective bargaining

agreement between PLCA and IBT is known as the National Pipe Line Agreement ("NPLA"). (Ex. A, JSF. ¶ 7.)

8.     Midwest was and is currently bound by the NPLA. (Ex. A, JSF. ¶ 8.) Certain previously-applicable NPLAs contained provisions requiring employers performing work under the NPLA, including but not limited to Midwest, to contribute to the Pension Fund for certain employees pursuant to the terms of the applicable NPLA. (Ex. A, JSF. ¶ 8.)

9.     On November 15, 2011, the PLCA entered into an agreement with the IBT (the "Agreement"). (Ex. A, JSF. ¶ 9.) The Agreement purported to terminate the obligation of employers performing work under the NPLA, including but not limited to Midwest, to contribute to the Pension Fund under the NPLA. (Ex. A, JSF. ¶ 9.)

10.     Midwest, along with other PLCA members, sent written notice to the Pension Fund on November 16, 2011, stating that Midwest's obligation to contribute to the Pension Fund under the NPLA terminated as of November 15, 2011. (Ex. A, JSF. ¶ 10.)

11.     The PLCA sent eight follow-up letters to the Pension Fund between November 28, 2011 and the end of the calendar year. (Ex. A, JSF. ¶ 11.) These letters each asked if PLCA's members (including but not limited to Midwest) needed to take any further action to ensure that each employer's termination of its obligation to contribute to the Pension Fund under the NPLA was effective. (Ex. A, JSF. ¶ 11.)

12.     In a letter dated January 30, 2012, the Pension Fund informed the IBT that it had determined that PLCA members (including but not limited to Midwest) had not effectively terminated their obligation to contribute to the Pension Fund as of November 15, 2011. (Ex. A, JSF. ¶ 12.)

13.     On March 15, 2012, PLCA member Michels Corporation filed suit in the U.S. District Court against the Pension Fund in a case titled *Michels Corp. et al v. Central States, Southeast and Southwest Areas Pension Fund, et al.*, 1:12-cv-04144, seeking a declaratory judgment that its obligation to contribute to the Pension Fund under the NPLA ceased on November 15, 2011. (Ex. A, JSF. ¶ 13.)

14.     On July 26, 2012, the PLCA, on behalf of its members, including Midwest, moved to intervene in the litigation seeking a declaratory judgment that all PLCA members similarly ceased to have an obligation to contribute to the Pension Fund under the NPLA as of November 15, 2011. (Ex. A, JSF. ¶ 14.)

15.     The Pension Fund denied the PLCA's and Michel Corp.'s contention that the obligation under the NPLA to contribute to the Pension Fund ceased on November 15, 2011. (Ex. A, JSF. ¶ 15.)

16.     On August 1, 2012, the Pension Fund filed counterclaims against 35 PLCA members, including Midwest, seeking to collect contributions allegedly owed to the Pension Fund from such PLCA members for work performed under the NPLA after November 15, 2011. (Ex. A, JSF. ¶ 16.)

**D.     The Midwest Controlled Group's partial withdrawal from the Pension Fund and the Notice and Demand of the Withdrawal Liability**

17.     The Pension Fund determined that on or about December 31, 2012, the Midwest Controlled Group effected a "partial withdrawal," as that term is defined in 29 U.S.C. § 1385(a)(2), as a result of the partial cessation of the Midwest Controlled Group's obligation to contribute to the Pension Fund. (Ex. A, JSF. ¶ 17.)

18.     As a result of the Pension Fund's determination of the Midwest Controlled Group's partial withdrawal referenced in paragraph 17, the Pension Fund determined that the

Midwest Controlled Group incurred withdrawal liability to the Pension Fund in the principal amount of $1,961,713.07, which determination was made under 29 U.S.C. § 1381(b) (the "Assessment" or "Withdrawal Liability") (Ex. A, JSF. ¶ 18.)

19.    In a letter dated March 14, 2014, the Pension Fund issued a notice and demand for payment of the Withdrawal Liability to the Midwest Controlled Group in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1) (the "Notice and Demand"). (Ex. A, JSF. ¶ 19.) The Notice and Demand was received by Midwest on or about March 17, 2014. (Ex. A, JSF. ¶ 19.)

20.    As of the date of the Notice and Demand and at all relevant times thereafter, Midwest was a party in *Michels Corp.* as a counter-defendant and/or through its status as a member of the PLCA. (Ex. A, JSF. ¶ 20.)

**E.    The Seventh Circuit's decision in *Michels Corp*. and the Midwest Controlled Group's initiation of the Arbitration**

21.    On September 2, 2015, the U.S. Court of Appeals for the Seventh Circuit issued its decision in *Michels Corp.* 800 F.3d 411 (7th Cir. 2015).  (Ex. A, JSF. ¶ 21.) The Seventh Circuit concluded that "the collective bargaining agreement between the PLCA and the Union expired . . . on January 31, 2011. Until November of that year, it was followed by a series of separate agreements, each of which carried the terms of the CBA forward." "The interim agreement that took effect on November 15, 2011 . . . eliminated the employers' duty to contribute to the [Pension Fund]. . . ." (Ex. A, JSF. ¶ 21.)

22.    In a letter dated October 30, 2015, the Midwest Controlled Group submitted a request for review to the Pension Fund under 29 U.S.C. § 1399(b)(2)(A) asserting, among other grounds, that the 2012 date of withdrawal used by the Pension Fund to calculate the Withdrawal Liability amount was erroneous and in direct conflict with the clear and unambiguous holding of the Seventh Circuit in *Michels Corp.* (Ex. A, JSF. ¶ 22.)

23.     In a letter also dated October 30, 2015, the Midwest Controlled Group demanded arbitration pursuant to 29 U.S.C. § 1401, 29 C.F.R. § 4221, Section 7 of the American Arbitration Association's ("AAA") Rules for Withdrawal Liability Disputes, and the withdrawal liability rules of the Fund in a case titled *Midwest Underground Inc. et al v. Central States, Se. & Sw. Areas Pension Fund*, AAA No. 01-15-000504525. (Ex. A, JSF. ¶ 23.) Arbitrator Norman Brand was appointed to serve as the arbitrator and the case has been stayed pending the outcome of this litigation. (Ex. A, JSF. ¶ 23.)

24.     Prior to the Midwest Controlled Group's demand for arbitration referenced in paragraph 23, 26 other members of the PLCA which were also parties to *Michels Corp.* had demanded arbitration within a 60-day period after the earlier of (A) the date of notification to the employer under section 4219(b)(2)(B) of ERISA, or (B) 120 days after the date of the employer's request under section 4219(b)(2)(A) or ERISA. (Ex. A, JSF. ¶ 24.)

25.     On October 28, 2015, the Midwest Controlled Group retained the law firm of Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") as counsel for purposes of challenging the Withdrawal Liability. (Ex. A, JSF. ¶ 25.) Akin Gump is also counsel of record in 26 of the arbitrations involving certain other PLCA members referenced in paragraph 24 including eight such cases pending before Arbitrator Brand. (Ex. A, JSF. ¶ 25.) The Midwest Controlled Group and the Pension Fund jointly agreed to stay all of the arbitrations referenced in paragraph 24 pending the outcome of the *Michels Corp* case because a "central issue in dispute" in the arbitrations was the same issue in dispute in *Michels Corp*. (Ex. A, JSF. ¶ 25.) On October 30, 2015, the Midwest Controlled Group submitted its demand for arbitration concerning the Notice and Demand. (Ex. A, JSF. ¶ 25.)

**F.     The Pension Fund's present lawsuit against K&M and Midwest**

26.     On December 23, 2015, Plaintiffs filed this action seeking an injunction and declaratory judgment under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.*, and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. (Ex. A, JSF. ¶ 26.) Plaintiffs assert that Defendants did not timely initiate arbitration for their claims and defenses relating to the Pension Fund's assessment of withdrawal liability because they failed to comply with 29 U.S.C. § 1401(a)(1), 29 C.F.R. §§ 4221.3(c), 4221.14, the American Arbitration Association's ("AAA") Multiemployer Pension Plan Arbitration Rules for Withdrawal Liability Disputes, and Appendix E of the Fund's Plan Document. (Ex. A, JSF. ¶ 26.)

27.     The sole legal issue in this action is whether Defendants timely initiated arbitration of their claims and defenses relating to the Pension Fund's withdrawal liability assessment under 29 U.S.C. § 1401(a)(1), 29 C.F.R. §§ 4221.3(c), 4221.14, the AAA Multiemployer Pension Plan Arbitration Rules for Withdrawal Liability Disputes, and Appendix E of the Fund's Plan Document, and, specifically, whether Defendants' deadline to initiate the statutory review and arbitration process was equitably tolled during the pendency of the litigation in *Michels Corp*. (Ex. A, JSF. ¶ 29.)

Respectfully submitted,

*/s/ Brandon A. Buyers*
Brandon A. Buyers (ARDC #06312454)
CENTRAL STATES FUNDS
Law Department
9377 West Higgins Road, 10th Floor
Rosemont, Illinois  60018
(847) 939-2464
bbuyers@centralstatesfunds.org

May 13, 2016                                         *COUNSEL FOR CENTRAL STATES*

## CERTIFICATE OF SERVICE

I, Brandon A. Buyers, one of the attorney for the Plaintiffs, certify that on May 13, 2016,

I served the foregoing *Central States' Local Rule 56.1(a)(3) Statement Of Material Facts* to the

following parties by email pursuant to the Court's standing order governing motions for

summary judgment:

Allison Papadopoulos (apapadopoulos@akingump.com)
Andrew Turnbull (aturnbull@akingump.com)
Elizabeth Cyr (ecyr@akingump.com)
Eric Field (efield@akingump.com)
Akin Gump Strauss Hauer & Feld, LLP

John Zawadsky (jzawadsky@reinhartlaw.com)
Robert Driscoll (rdriscol@reinhartlaw.com)
Reinhart Boerner Van Deuren S.C.

Respectfully submitted,

*/s/ Brandon A. Buyers*
Brandon A. Buyers (ARDC #06312454)
CENTRAL STATES FUNDS
Law Department
9377 West Higgins Road, 10th Floor
Rosemont, Illinois 60018
(847) 939-2464
bbuyers@centralstatesfunds.org

May 13, 2016                     *COUNSEL FOR CENTRAL STATES*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and ARTHUR H. BUNTE, JR., as Trustee, | ) ) ) | |
| | ) | Case No.: 15-cv-11586 |
| Plaintiffs, | ) | |
| | ) | Judge: James B. Zagel |
| v. | ) | |
| | ) | Magistrate Judge: Michael Mason |
| K&M EQUIPMENT, INC., an Illinois corporation, and MIDWEST UNDERGROUND, INC., an Illinois corporation, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## JOINT STIPULATED FACTS

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund (the "Fund") and

Arthur H. Bunte, Jr., as Trustee (collectively, "Plaintiffs"), and Defendants K&M Equipment,

Inc. ("K&M") and Midwest Underground, Inc. ("Midwest") (collectively, "Defendants") hereby

stipulate and agree to the following facts:

1.     The Fund is a multiemployer pension plan within the meaning of the Employee

Retirement and Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002(37) and 1301(a)(3).

2.     Arthur H. Bunte, Jr. is a trustee of the Fund and its plan sponsor within the

meaning of 29 U.S.C. § 1301(a)(10).

3.     Midwest is an Illinois corporation with its principal office located in East Moline,

Illinois.

4.     K&M is an Illinois corporation with its principal office located in East Moline,

Illinois.

5.      At all relevant times, Midwest & K&M were a group of trades or businesses under common control (the "Midwest Controlled Group") and therefore constituted a single employer within the meaning of Title IV of ERISA, 29 U.S.C. § 1301(b)(1).

6.      The Midwest Controlled Group is an "employer" for purposes of the determination and assessment of withdrawal liability under Title IV of ERISA.

7.      At all relevant times, Midwest was a member of the Pipe Line Contractors Association ("PLCA").  The PLCA, on behalf of its members, negotiates and administers industry-wide labor agreements with various unions, including the International Brotherhood of Teamsters ("IBT").  The industry-wide collective bargaining agreement between PLCA and IBT is known as the National Pipe Line Agreement ("NPLA").

8.      Midwest was and is currently bound by the NPLA.  Certain previously-applicable NPLAs contained provisions requiring employers performing work under the NPLA, including but not limited to Midwest, to contribute to the Fund for certain employees pursuant to the terms of the applicable NPLA.

9.      On November 15, 2011, the PLCA entered into an agreement with the IBT (the "Agreement").  The Agreement purported to terminate the obligation of employers performing work under the NPLA, including but not limited to Midwest, to contribute to the Fund under the NPLA.  A true and correct copy of the Agreement is attached as Exhibit A.

10.     Midwest, along with other PLCA members, sent written notice to the Fund on November 16, 2011, stating that Midwest's obligation to contribute to the Fund under the NPLA terminated as of November 15, 2011.  A true and correct copy of the relevant excerpts of the notice sent by Midwest to the Fund is attached as Exhibit B.

11.     The PLCA sent eight follow-up letters to the Fund between November 28, 2011 and the end of the calendar year.  These letters each asked if PLCA's members (including but not limited to Midwest) needed to take any further action to ensure that each employer's termination of its obligation to contribute to the Fund under the NPLA was effective.

12.     In a letter dated January 30, 2012, the Fund informed the IBT that it had determined that PLCA members (including but not limited to Midwest) had not effectively terminated their obligation to contribute to the Fund as of November 15, 2011.  A true and correct copy of the January 30, 2012 letter is attached as Exhibit C.

13.     On March 15, 2012, PLCA member Michels Corporation filed suit in the U.S. District Court against the Fund in a case titled *Michels Corp. et al v. Central States, Southeast and Southwest Areas Pension Fund, et al.*, 1:12-cv-04144, seeking a declaratory judgment that its obligation to contribute to the Fund under the NPLA ceased on November 15, 2011.

14.     On July 26, 2012, the PLCA, on behalf of its members, including Midwest, moved to intervene in the litigation seeking a declaratory judgment that all PLCA members similarly ceased to have an obligation to contribute to the Fund under the NPLA as of November 15, 2011.

15.     The Fund denied the PLCA's and Michel Corp.'s contention that the obligation under the NPLA to contribute to the Fund ceased on November 15, 2011.

16.     On August 1, 2012, the Fund filed counterclaims against 35 PLCA members, including Midwest, seeking to collect contributions allegedly owed to the Fund from such PLCA members for work performed under the NPLA after November 15, 2011.

17.     The Fund determined that on or about December 31, 2012, the Midwest Controlled Group effected a "partial withdrawal," as that term is defined in 29 U.S.C. §

1385(a)(2), as a result of the partial cessation of the Midwest Controlled Group's obligation to contribute to the Fund.

18.     As a result of the Fund's determination of the Midwest Controlled Group's partial withdrawal referenced in paragraph 17, the Fund determined that the Midwest Controlled Group incurred withdrawal liability to the Fund in the principal amount of $1,961,713.07, which determination was made under 29 U.S.C. § 1381(b) (the "Assessment" or "Withdrawal Liability").

19.     In a letter dated March 14, 2014, the Fund issued a notice and demand for payment of the Withdrawal Liability to the Midwest Controlled Group in accordance with 29 U.S.C. §§ 1382(2) and 1399(b)(1) (the "Notice and Demand").  A true and correct copy of the Notice and Demand is attached as Exhibit D. The Notice and Demand was received by Midwest on or about March 17, 2014.

20.     As of the date of the Notice and Demand and at all relevant times thereafter, Midwest was a party in *Michels Corp.* as a counter-defendant and/or through its status as a member of the PLCA.

21.     On September 2, 2015, the U.S. Court of Appeals for the Seventh Circuit issued its decision in *Michels Corp.* 800 F.3d 411 (7th Cir. 2015).  The Seventh Circuit concluded that "the collective bargaining agreement between the PLCA and the Union expired . . . on January 31, 2011.  Until November of that year, it was followed by a series of separate agreements, each of which carried the terms of the CBA forward." "The interim agreement that took effect on November 15, 2011 . . . eliminated the employers' duty to contribute to the [Fund]. . . ."

22.     In a letter dated October 30, 2015, the Midwest Controlled Group submitted a request for review to the Fund under 29 U.S.C. § 1399(b)(2)(A) asserting, among other grounds,

that the 2012 date of withdrawal used by the Fund to calculate the Withdrawal Liability amount was erroneous and in direct conflict with the clear and unambiguous holding of the Seventh Circuit in *Michels Corp*. A true and correct copy of the October 30, 2015 request for review is attached as Exhibit E.

23. In a letter dated October 30, 2015, the Midwest Controlled Group demanded arbitration pursuant to 29 U.S.C. § 1401, 29 C.F.R. § 4221, Section 7 of the American Arbitration Association's ("AAA") Rules for Withdrawal Liability Disputes, and the withdrawal liability rules of the Fund in a case titled *Midwest Underground Inc. et al v. Central States, Se. & Sw. Areas Pension Fund*, AAA No. 01-15-000504525. A true and correct copy of the October 30, 2015 demand for arbitration is attached as Exhibit F. Arbitrator Norman Brand was appointed to serve as the arbitrator and the case has been stayed pending the outcome of this litigation.

24. Prior to the Midwest Controlled Group's demand for arbitration referenced in paragraph 23, 26 other members of the PLCA, which were also parties to *Michels Corp.*, had demanded arbitration within a 60-day period after the earlier of (A) the date of notification to the employer under section 4219(b)(2)(B) of ERISA, or (B) 120 days after the date of the employer's request under section 4219(b)(2)(A) or ERISA.

25. On October 28, 2015, Midwest Controlled Group retained undersigned counsel for purposes of challenging the Withdrawal Liability. Undersigned counsel is also counsel of record in 26 of the arbitrations involving certain other PLCA members referenced in paragraph 24 including eight such cases pending before Arbitrator Brand. Undersigned counsel and the Fund jointly agreed to stay all of the arbitrations referenced in paragraph 24 pending the outcome of the *Michels Corp* case because a "central issue in dispute" in the arbitrations was the same issue in dispute in *Michels Corp*. A true and correct copy of the parties' joint request dated

March 6, 2014 to stay arbitrations pending before Arbitrator Brand is attached as Exhibit G. On October 30, 2015, the Midwest Controlled Group submitted its demand for arbitration concerning the Notice and Demand.

26.     On December 23, 2015, Plaintiffs filed this action seeking an injunction and declaratory judgment under the Employee Retirement Income Security Act of 1974, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1001 *et seq.*, and under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. Plaintiffs assert that Defendants did not timely initiate arbitration for their claims and defenses relating to the Fund's assessment of withdrawal liability because they failed to comply with 29 U.S.C. § 1401(a)(1), 29 C.F.R. §§ 4221.3(c), 4221.14, the AAA Multiemployer Pension Plan Arbitration Rules for Withdrawal Liability Disputes, and Appendix E of the Fund's Plan Document.

27.     Defendants contend that Plaintiffs used an incorrect withdrawal date in their Assessment of withdrawal liability and that Defendants' deadline for arbitrating this issue was equitably tolled by Plaintiffs' and Defendants' litigation of this identical issue in *Michels Corp.* Defendants also deny that the Fund is entitled to any relief relating to the arbitration.

28.     Plaintiffs assert that the deadline to initiate arbitration was not equitably tolled and, as a result, Defendants have no right to assert their claims or defenses in arbitration.

29.     The sole legal issue in this action is whether Defendants timely initiated arbitration of their claims and defenses relating to the Fund's withdrawal liability assessment under 29 U.S.C. § 1401(a)(1), 29 C.F.R. §§ 4221.3(c), 4221.14, the AAA Multiemployer Pension Plan Arbitration Rules for Withdrawal Liability Disputes, and Appendix E of the Fund's Plan Document, and, specifically, whether Defendants' deadline to initiate the statutory review and arbitration process was equitably tolled during the pendency of the litigation in *Michels Corp.*

6

Dated: March 29, 2016     /s/ Eric D. Field
              Eric D. Field (IL State Bar No. 6255922)
              Elizabeth A. Cyr (*pro hac vice*)
              Andrew R. Turnbull (*pro hac vice*)
              Allison S. Papadopoulos (*pro hac vice*)
              AKIN GUMP STRAUSS HAUER & FELD, LLP
              1333 New Hampshire Avenue, NW
              Washington, DC 20036
              Telephone: 202.887.4000
              Facsimile: 202.778.4288
              efield@akingump.com

              Attorneys for Defendants.


              /s/ with consent of Brandon A. Buyers
              Brandon A. Buyers
              CENTRAL STATES FUNDS LAW DEPARTMENT
              9377 West Higgins Road, 10th Floor
              Rosemont, Illinois 60018
              Telephone:  847.939.2464
              bbuyers@centralstatesfunds.org

              Attorney for Plaintiffs.

# EXHIBIT A

November 15, 2011

## AMENDMENT TO AND EXTENSION OF COLLECTIVE BARGAINING AGREEMENT BETWEEN PIPE LINE CONTRACTORS ASSOCIATION AND THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS

WHEREAS, the current National Pipe Line Agreement ("CBA") between the Pipe Line Contractors Association and those of its contractor members and such other Mainline Pipe Line Contractors who execute an acceptance of the terms and provisions of the CBA ("PLCA") and the International Brotherhood of Teamsters ("Union" and collectively "Parties"), as previously extended, expires at midnight, November 15, 2011;

WHEREAS, the Parties have reached agreement that the PLCA may cease all contributions to the Central States, Southeast and Southwest Areas Pension Plan ("Central States");

WHEREAS, agreement on certain other issues has not been reached;

WHEREAS the Parties wish to give formal notice of this decision to Central States in order to preclude any contention by Central States that one or more members of PLCA has an obligation to contribute to Central States under the Agreement for any period after November 15, 2011;

WHEREAS, the Parties agree that this goal can best be accomplished by executing this amendment to and extension of the CBA; and

WHEREAS, the Parties wish to amend and extend the CBA though December 31, 2011.

NOW, THEREFORE, BE IT:

RESOLVED THAT, Section (I) of Article I of the CBA relating to subcontracting shall be unchanged.

RESOLVED THAT, Section (C) of Article V of the CBA shall be amended to replace the existing job classifications with the classifications attached hereto as Schedule A.

RESOLVED THAT, Section (E) of Article V of the CBA shall remain unchanged.

RESOLVED THAT, Section (I)(a) of Article V of the CBA shall be amended to read as follows:

(a)     Fringe Benefit contributions under this Agreement shall be paid for all hours worked.  All welfare contributions for Travelers will be remitted to the Central States, Southeast and Southwest Areas Health and Welfare Fund through the period the CBA is extended. Contributions for fringe benefits for all Non-Travelers will be remitted to the local funds having jurisdiction over the work, unless that local fund is the Central States, Southeast and Southwest Areas Pension Plan ("Central States").  Consequently, as of November 16, 2011, no Employer

201675062 v2

November 15, 2011

shall have an obligation to contribute to Central States. The amount of those pension contributions, as well as the amount of all pension contributions on behalf of the Travelers, shall be made to a plan or plans mutually acceptable to the Parties. Until the Parties agree upon a mutually acceptable plan or plans, all funds that would otherwise be remitted to Central States shall be held in escrow.

RESOLVED FURTHER THAT, new Section (K) of Article V shall be added to read as follows:

(K)    Pension Protection Act: The undersigned Parties acknowledge and agree that the applicable multi-employer pension plan is, or may become, subject to the remedial provisions and requirements of the federal Pension Protection Act of 2006 (PPA), which sets forth certain funding standards and remedial requirements for multi-employer pension plans. Under applicable circumstances, the PPA imposes extra-contractual obligations upon contributing employers. The Union hereby agrees that, in the event any contribution surcharges, funding obligation, eligibility requirements, rehabilitation plan terms, or any other PPA provision or requirement results, in obligating the Employer to contribute any amount in excess of the amount agreed upon herein during the term of this Agreement, the corresponding amount of such additional contribution obligation shall be offset by equivalent reductions to the wage rates set forth in Schedule A of this Agreement. Should the offset amounts not be readily ascertainable, *i.e.*, other than $xx.xx per hour per employee or $xx.xx per week, per employee, the undersigned Parties shall attempt to agree upon the amount(s) and methodology for the calculation and implementation of any such offsets. Failing to agree, the matter shall be subject to the grievance and arbitration procedure set forth in Article X of this Agreement. The costs of such arbitration shall be borne by the Union.

RESOLVED FINALLY THAT, this extension of the CBA shall terminate on midnight of December 31, 2011.

**SEEN & AGREED:**

Michael T. Manley
Staff Attorney
International Brotherhood of
Teamsters

Charles P. Joyce
Chairman, PLCA Labor Committee

Dated: 11/15/11

Dated: 11/15/11

201675062 v2

11/15/2011

**Group 1**
Articulating End Dump
*Low Boy
Rollagon or similar type equipment
*Steward
*Truck mechanics

**Group 2**
A-Frame
Challenger (For transportation
    purposes)
Fork Lift
*Fuel Truck
Gin Pole
Rubber-tired Tractor
*Stringing Truck
Tandem Float (4 & 5 axle)
Track Truck/All-Track
    Dumper Equipment
~~Vacuum Truck~~
Winch Truck

**Group 3**
~~Ambulance~~
Bus
Dump Truck (2 axle)
Dump Truck (3 axle)
Flat Bed Truck (2 axle)
Flat Bed Truck (3 axle)
~~Grease Truck~~
Hot Pass Truck (3 axle)
Jeep
Pick-up
Single Axle Float (3 axle)
Skid Truck (2 axle)
Skid Truck (3 axle)
Station Wagon
Stringer Bead & Hot Pass (2 axle)
Swamp Buggy/Marsh Buggy, or
    similar type Equipment
Team Driver
**Warehouseman - Parts Chaser
Water Truck (2 axle)
Water Truck (3 axle)

 *(Premium of $2.25 above regular rate)
**(Contact IBT or PLCA for additional information on this classification)
**Note**: Haz-Mat endorsement premium.
(Teamsters required to work in Haz-Mat classification will receive premium of $1.00
above regular group rate. Premium to be paid for full day where Haz-Mat work is
required.)

    (D)    The naming of the particular classifications above does not imply that the
Employer is required to employ men in each classification, and the Employer shall be the
sole judge as to the number of men to be employed.

    (E)    Suburbans and/or passenger vans, crew cabs, pick-up trucks and 1-ton
trucks shall come under the jurisdiction of the Union when used primarily for
transportation of men, equipment and material and will be carried under the Group 3
classification. Employer retains sole discretion for hiring and assignment of this
equipment. When this equipment is assigned to specialty crews such as fence crews,
environmental crews, survey crews, bending engineer/crews, clearing crews or similar
crews a Teamster will be assigned only when such equipment is used primarily for
transportation of men, equipment and material.

# EXHIBIT B

# AKIN GUMP
## STRAUSS HAUER & FELD LLP

━━━━━━━ Attorneys at Law

CHARLES V. STEWART
202.887.4158/fax: 1.202.887.4288
cstewart@akingump.com

November 16, 2011

VIA HAND DELIVERY

Contracts Department
Central States, Southeast and
Southwest Areas Pension Fund
9377 West Higgins Road
Rosemont, Illinois 60018-4938

      Re:    Notice of Termination of Contribution Obligation

Dear Sir or Madam:

      As counsel for the Pipe Line Contractors Association ("PLCA"), we have directed one of the Firm's legal assistants personally to deliver the enclosed notices on behalf of certain PLCA members. Please check the members' names on the enclosed list against the enclosed letters to confirm that you have a letter from each member listed. Assuming the list is accurate, please acknowledge this fact by signing the list where indicated and returning it to our legal assistant. If you believe the list is inaccurate in any respect, please note the discrepancy directly on the list before signing it.

      Also enclosed is a copy of the current CBA and a fully executed Amendment to and Extension of the CBA. As you will see, the Amendment clearly and formally memorializes the Parties agreement to terminate any obligation to contribute to the Plan.

      The letters speak for themselves. Pursuant to Section 1 of Article III of the Trust Agreement for the Central States, Southeast and Southwest Areas Pension Plan ("Plan"), the letters constitute official notification that the member has taken the lawful action of ceasing contributions to the Plan, effective as of November 16, 2011. Note that certain PLCA members have decided not to participate in this delivery. You should expect to receive separate letters from most of these members at a later date.

      Based on my conversation with James P. Condon, Secretary to the Board and Deputy Chief Legal Officer of the Plan, we believe that each letter constitutes effective notice to terminate each member's obligation to contribute to the Plan as of such date. Please contact me immediately at the above direct-dial number if you have a different view for any reason.

AKIN GUMP
STRAUSS HAUER & FELD LLP
━━━━━━━ Attorneys at Law

Contracts Department
Central States, Southeast and
Southwest Areas Pension Fund
November 16, 2011
Page 2


        For example, you will note that some letters state a November 15 termination date.  This
difference is due to the fact the CBA expired on midnight, November 15, leading some members
to conclude that November 15 is the appropriate date. If you believe that the use of this date
renders the notices defective, please notify me immediately.

        For obvious reasons, it is imperative that the termination date of each member's
contribution obligations be effective prior to December 31, 2011. This date means the members
have less than 45 days to address any objection with the notice of termination you may choose to
raise.

        Thank you for your consideration.


                                    Sincerely,


                                    Charles V. Stewart


Enclosures

Cc:      J. Patrick Tielborg, Esq.
         James P. Condon, Esq.
         Lawrence D. Levien, Esq.

November 16, 2011

The following materials were hand delivered to the Central States, Southeast and Southwest Areas Pension Fund on behalf of the Pipe Line Contractors Association and certain of its Members:

1. Correspondence from Abercrombie Pipeline Services, LLC

2. Correspondence from Apex Pipeline Services, Inc.

3. Correspondence from Appalachian Pipeline Contractors, LLP

4. Correspondence from ARB, Inc.

5. Correspondence from Associated Pipe Line Contractors, Inc.

6. Correspondence from Big Inch Fabricators & Construction, Inc.

7. Correspondence from Blackwell Enterprises, Inc.

8. Correspondence from Brandenburg Drainage Inc.

9. Correspondence from Continental Energy Services /MBCORP LLC/ Foltz Construction Inc. / Foltz Welding,Ltd. / H.D. Griffin Co. / Griffin Pipeline Services LLC

10. Correspondence from Circle K Pilot Cars, LLC

11. Correspondence from Contractors Rental Corp/ d/b/a C.J. Hughes Pipeline

12. Correspondence from Dun Transportation & Stringing, Inc.

13. Correspondence from Gabe's Construction Co., Inc.

14. Correspondence from Henkels & McCoy Inc.

15. Correspondence from IndianHead Pipeline Services, LLC

16. Correspondence from Laney Directional Drilling Co.

17. Correspondence from Laney Inc.

18. Correspondence from Latex Construction Co.

19. Correspondence from LeTourneau Products Manufacturing Corp.

20. Correspondence from Michels Corporation a/k/a Michels Pipeline Construction

1

21. Correspondence from Midwest Underground, Inc.

22. Correspondence from Electric Conduit Construction Company d/b/a Midwestern Contractors

23. Correspondence from Midwestern Pipeline Services, Inc.

24. Correspondence from Miller Pipeline LLC

25. Correspondence from Minnesota Limited, LLC / Vectren Corp.

26. Correspondence from Nationwide Pipeline Escorts of America, LLC

27. Correspondence from Northern Clearing, Inc.

28. Correspondence from Otis Eastern Service, Inc.

29. Correspondence from Oz Directional Drilling, Inc.

30. Correspondence from PE Ben USA, Inc.

31. Correspondence from Philips & Jordan, Inc.

32. Correspondence from Pipe Line Constructors, LLC

33. Correspondence from Precision Pipeline, LLC

34. Correspondence from Price Gregory International, Inc.

35. Correspondence from ProFoam, LLC

36. Correspondence from Q3 Contracting, Inc.

37. Correspondence from Right - of - Way Clearing & Maintenance, Inc.

38. Correspondence from R.L. Coolsaet Construction Co.

39. Correspondence from Rockford Corp.

40. Correspondence from Rodenberg Diversified, LLC

41. Correspondence from Schmid Pipeline Construction, Inc.

42. Correspondence from Southeast Directional Drilling, LLC

43. Correspondence from Terra Restoration Services, LLC

44. Correspondence from T.G. Mercer Consulting Services, Inc.

45. Correspondence from United Piping, Inc.

2

46. Correspondence from U.S. Pipeline, Inc.

47. Correspondence from Utility Line Services, Inc.

48. Correspondence from Welded Construction, LP

49. Current Collective Bargaining Agreement between the Pipe Line Contactors Association and the International Brotherhood of Teamsters dated February 7, 2006 and consecutive extensions thereafter through November 15, 2011

50. Amendment to & Extension of the Current Collective Bargaining Agreement between the Pipe Line Contactors Association and the International Brotherhood of Teamsters dated November 15, 2011

Receipt of this acknowledged this 16th day of November, 2011.

CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION FUND

BY: _____

 **Midwest Underground, Inc.**

<u>**Via Overnight Delivery with Return Receipt**</u>

November 09, 2011

Contracts Department
Central States, Southeast and
Southwest Areas Pension Fund
9377 West Higgins Road
Rosemont, IL 60018-4938

**RE:  Notice of Termination of Obligation to Contribute**

Dear Sir or Madam:

Pursuant to Section 1 of Article III of the Trust Agreement for the Central States, Southeast and Southwest Areas Pension Plan ("Plan"), this letter constitutes official notification by Midwest Underground, Inc., that it has taken the lawful action of withdrawing from the Plan, effective as of November 15, 2011. Based upon our understanding of a conversation between counsel for the Pipe Line Contractors Association ("PLCA") and James P. Condon, Secretary to the Board and Deputy Chief Legal Counsel of the Plan, we believe that this letter constitutes effective notice to terminate Midwest Underground, Inc.'s obligation to contribute to the Plans as of such date. Please contact PLCA's Counsel, J. Patrick Tielborg, immediately if you have a different view. Mr. Tielborg can be reached at (214) 969 – 2700.

Thank you for your consideration.

Sincerely,

Larry Ernst, President

LE:rm
cc: J. Patrick Tielborg, Esq.
    James P. Condon, Esq.
    Lawrence D. Levien, Esq.

# EXHIBIT C



**CENTRAL STATES
SOUTHEAST AND
SOUTHWEST AREAS
PENSION FUNDS**

EMPLOYEE TRUSTEES
FRED GEGARE
JERRY YOUNGER
GEORGE J. WESTLEY
CHARLES A. WHOBREY

EMPLOYER TRUSTEES
HOWARD McDOUGALL
ARTHUR H. BUNTE, JR.
GARY F. CALDWELL
RONALD DESTEFANO

EXECUTIVE DIRECTOR
THOMAS C. NYHAN

January 30, 2012

Mr. Michael Manley
Staff Attorney
International Brotherhood of Teamsters
Legal Department
25 Louisiana, N.W.
Washington, D.C.   20001

      **Re:    Pipe Line Contractors Association (PLCA)**

Dear Mr. Manley:

      This is written in response to your January 13, 2012 letter, wherein you asked for a statement of the Pension Fund's "position regarding the date on which members of the PLCA withdrew from the Central States Pension Fund."

      The Central States Pension Fund's Board of Trustees have authorized me to convey to you that neither the correspondence that legal counsel (Akin Gump) for various PLCA members delivered to the Fund's offices on November 16, 2011, nor any of the other correspondence forwarded to the Fund by or on behalf of any PLCA members at any time during 2011, was effective to terminate any of the PLCA members' obligations to contribute to the Fund. Consequently, it is the Pension Fund's position that during calendar year 2011 none of the PLCA members withdrew from the Pension Fund or terminated their obligations to contribute to the Fund. However, the Pension Fund does not have sufficient information at this time to determine whether (or when), subsequent to year-end 2011, any of the PLCA members withdrew from the Fund or otherwise ceased to have an obligation to contribute to the Fund on behalf of their employees.

      I believe this information is responsive to your January 13 letter.

               Sincerely,

               Thomas C. Nyhan
               Executive Director and
               General Counsel

TCN/drb

cc:    Pat Tielborg
       Charlie Joyce

# EXHIBIT D



# CENTRAL STATES PENSION FUND



RECEIVED
MAR 17 2014
BY:

March 14, 2014

**VIA UPS NEXT DAY DELIVERY**
# 1Z 395 1X9 01 9481 8066

Mr. Larry Ernst
President
Midwest Underground, Inc.
3150 5th Avenue
East Moline, IL 61244

RE: NOTICE AND DEMAND FOR PAYMENT OF WITHDRAWAL LIABILITY
K & M EQUIPMENT, INC. / MIDWEST UNDERGROUND, INC.
ASSESSMENT NO.: 4249450-WL140020-01
WITHDRAWN ACCOUNT NO.: 5418000-0100

Dear Mr. Ernst:

This is a demand for payment of withdrawal liability incurred as a result of a permanent cessation of contributions to Central States, Southeast and Southwest Areas Pension Fund (the "Fund") by the above captioned business on behalf of some, or all, of its bargaining unit employees. This demand is made pursuant to Section 4219 of the Employee Retirement Income Security Act of 1974, as amended (29 U.S.C. 1399 (b)), and applies equally to all members of any controlled group of trades or businesses, as defined in Section 414(c) of the Internal Revenue Code, of which the above captioned business is a member.

The total amount of such withdrawal liability is $1,961,713.07.

Please make your check payable to Central States Southeast and Southwest Areas Pension Fund (please write the assessment number on your check) and forward it to the address as follows:

CENTRAL STATES WITHDRAWAL LIABILITY
Department 10291
Palatine, Illinois 60055-0291

If you would prefer to utilize Electronic Funds Transfer ("Wire Transfer"), the following is the Fund's account information:

BNY Mellon, N.A.
American Banking Association Number: 043-000-261
Account No. 000093-2289
Beneficiary: Central States Pension Fund

At your option, the withdrawal liability may be amortized and paid in monthly installments according to a minimum required monthly payment schedule in which payments are due on the first day of each month in the amount of $15,061.22 commencing on April 1, 2014 and ending on January 1, 2034, with a final payment in the amount of $1,830.14 due on February 1, 2034. No penalty, interest or amortization charges will be applied if payment of the entire withdrawal liability is received by this office on or before April 1, 2014.

Mr. Larry Ernst
March 14, 2014
Page Two

Subject to applicable regulations, if any payment of withdrawal liability is not made when due and such payment plus delinquency charges is not made within sixty (60) days after receiving written notice from the Fund of such delinquency, the Fund may require immediate payment of the remaining balance of the withdrawal liability plus delinquency charges accrued from the due date of the first payment which was not timely made.

Enclosed herewith are documents as follows:

1.  A copy of the withdrawal liability calculation;

2.  A set of remittance notices to be included with your monthly installments; and

3.  A copy of the Fund's procedure governing review of any items relating to the determination and calculation of withdrawal liability, the minimum required payment schedule, and the resolution of disputes regarding withdrawal liability.

Sincerely,

Christopher R. Brown
Department Manager
Collections Division

CB: PCS-notice and demand letter
Enclosures

Assessment Number: 4249450-WL140020-01

Withdrawn Company Name: Midwest Underground, Inc.

Type of Calculation: 2012 Partial Withdrawal

Date Prepared: March 14, 2014

## Section I - Pre-1980 Pool

a) All Employers' Contributions
(1975 - 1979)

| Year | Contributions | CBUs |
|---|---|---|
| 1975 | 0.00 | 0.00 |
| 1976 | 0.00 | 0.00 |
| 1977 | 0.00 | 0.00 |
| 1978 | 0.00 | 0.00 |
| 1979 | 0.00 | 0.00 |
| Total | 0.00 | |

b) All Employers' Contributions (1975 - 1979)  1,993,217,854

c) Allocation Fraction  0.0000000000

d) Unamortized 12/31/79 UVB  0.00

e) Pre-1980 Pool Liability  0.00

## Section II - Post-1979 Pool

a) Withdrawn Employer's Contributions
Last 10 Years

| Year | Contributions | CBUs |
|---|---|---|
| 2002 | 0.00 | 0.00 |
| 2003 | 0.00 | 0.00 |
| 2004 | 10,880.00 | 85.00 |
| 2005 | 25,124.00 | 198.00 |
| 2006 | 27,641.00 | 215.00 |
| 2007 | 82,632.80 | 498.45 |
| 2008 | 116,261.60 | 755.40 |
| 2009 | 89,109.00 | 556.40 |
| 2010 | 190,924.32 | 1,051.20 |
| 2011 | 253,885.48 | 1,370.70 |
| Total | 796,458.20 | 4,730.15 |

b) All Employers' Contributions (Last 10 years)  6,507,153,192

c) Allocation Fraction  0.0001223973

d) Net Change in UVB  (12/31/11)  22,496,536,285

e) Post-1979 Pool Liability  2,753,516.06

**Section III - Adjustments to Liability**

| | |
|---|---|
| a) Unadjusted Liability | 2,753,516.06 |
| b) De Minimis Rule | 0.00 |
| c) Prior Assessment(s) Credit | 0.00 |
| d) Partial Prorate | 791,802.48 |
| e) Section 4225 Limitations | 0.00 |
| f) Adjusted Liability | 1,961,713.58 |

**Section IV - Partial Prorate**

a) CBUs in Next Year                                      243.40

b) 5-Year Average (CBUs)

| Year | CBUs |
|---|---|
| 2007 | 498.45 |
| 2008 | 755.40 |
| 2009 | 556.40 |
| 2010 | 1,051.20 |
| 2011 | 1,370.70 |
| Total | 4,232.15 |

| | |
|---|---|
| 5-Year Average | 846.43 |
| c) Prorate Fraction | 0.7124394908 |
| d) Remaining Liability | 2,753,516.06 |
| e) Partial Prorate | 791,802.48 |

**Section V - Payment Schedule**

a) High Contribution Rate (Weekly Rate Basis)            254.00

b) 3-Year Average CBUs

| Year | CBUs |
|---|---|
| 2009 | 556.40 |
| 2010 | 1,051.20 |
| 2011 | 1,370.70 |
| Total | 2,978.30 |

| | |
|---|---|
| 3-Year Average | 992.77 |
| c) Partial Prorate Fraction | 0.7124394908 |
| d) Annual Payment | 179,650.86 |
| e) Monthly Payment Amount | 15,061.22 |
| f) Amortization Interest Rate | 7.5% |

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS
## Employer : K & M EQUIPMENT INC - 4249450
### Pension Fund
#### PERIOD : 12/30/2001 - 12/31/2011
Controlled Group as of : 12/29/2012
PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - SUMMARY

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| 4249450 - K & M EQUIPMENT INC | | | | | | | |
| | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $10,880.00 | 0 | 0 | 425 | 0.00 | 85.00 |
| | 2005 | $25,124.00 | 41 | 0 | 785 | 0.00 | 198.00 |
| | 2006 | $27,641.00 | 35 | 0 | 900 | 0.00 | 215.00 |
| | 2007 | $82,632.80 | 6 | 0 | 1220 | 9,938.00 | 498.45 |
| | 2008 | $116,261.60 | 10 | 0 | 3727 | 0.00 | 755.40 |
| | 2009 | $89,109.00 | 26 | 0 | 2652 | 0.00 | 556.40 |
| | 2010 | $190,924.32 | 0 | 0 | 2047 | 25,672.08 | 1,051.20 |
| | 2011 | $253,885.48 | 10 | 0 | 2019 | 38,276.03 | 1,370.70 |
| Totals for Employer: | | $796,458.20 | 128 | 0 | 13775 | 73,886.11 | 4,730.15 |

Page 1 of 1

As of date : 03/14/2014

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS

## Employer : K & M EQUIPMENT INC - 4249450

### Pension Fund

PERIOD : 12/30/2001 - 12/31/2011
Controlled Group as of : 12/29/2012

## PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| 4249450 - K & M EQUIPMENT INC | | | | | | | |
| 4249450 - 0100 - 00371A | | | | | | | |
| K & M EQUIPMENT INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $10,880.00 | 0 | 0 | 425 | 0.00 | 85.00 |
| | 2005 | $20,096.00 | 0 | 0 | 785 | 0.00 | 157.00 |
| | 2006 | $23,040.00 | 0 | 0 | 900 | 0.00 | 180.00 |
| | 2007 | $27,698.50 | 0 | 0 | 998 | 0.00 | 199.60 |
| | 2008 | $46,830.00 | 0 | 0 | 1512 | 0.00 | 302.40 |
| | 2009 | $52,811.80 | 0 | 0 | 1622 | 0.00 | 324.40 |
| | 2010 | $48,136.80 | 0 | 0 | 1369 | 0.00 | 273.80 |
| | 2011 | $49,519.00 | 0 | 0 | 1308 | 0.00 | 261.60 |
| 4249450 - 0100 - 00371B | | | | | | | |
| K & M EQUIPMENT INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $2,812.80 | 0 | 0 | 96 | 0.00 | 19.20 |
| | 2008 | $2,292.20 | 0 | 0 | 73 | 0.00 | 14.60 |
| | 2009 | $3,401.00 | 0 | 0 | 106 | 0.00 | 21.20 |
| | 2010 | $8,071.20 | 0 | 0 | 227 | 0.00 | 45.40 |
| | 2011 | $13,024.80 | 0 | 0 | 342 | 0.00 | 68.40 |

As of date : 03/14/2014

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS
## Pension Fund
### Employer : K & M EQUIPMENT INC - 4249450

PERIOD : 12/30/2001 - 12/31/2011
Controlled Group as of : 12/29/2012
PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| *4249450 - K & M EQUIPMENT INC* | | | | | | | |
| *4249450 - 0100 - 00722A* | | | | | | | |
| K & M EQUIPMENT INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $5,028.00 | 41 | 0 | 0 | 0.00 | 41.00 |
| | 2006 | $4,070.20 | 31 | 0 | 0 | 0.00 | 31.00 |
| | 2007 | $796.20 | 6 | 0 | 0 | 0.00 | 6.00 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2011 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| **Total for Employer:** | | **$318,508.50** | **78** | **0** | **9763** | **0.00** | **2030.60** |
| *5418000 - 0100 - 00135A* | | | | | | | |
| MIDWEST UNDERGROUND INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2008 | $918.00 | 10 | 0 | 0 | 0.00 | 10.00 |
| | 2009 | $2,430.60 | 26 | 0 | 0 | 0.00 | 26.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |

As of date : 03/14/2014

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS
## Employer : K & M EQUIPMENT INC - 4249450
### Pension Fund
PERIOD : 12/30/2001 - 12/31/2011
Controlled Group as of : 12/29/2012
## PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| *4249450 - K & M EQUIPMENT INC* | | | | | | | |
| 5418000 - 0100 - 00135A | 2011 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| MIDWEST UNDERGROUND INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| 5418000 - 0100 - 00135B | | | | | | | |
| MIDWEST UNDERGROUND INC | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2011 | $809.20 | 7 | 0 | 0 | 0.00 | 7.00 |
| 5418000 - 0100 - 00179A | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| MIDWEST UNDERGROUND INC | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |

As of date : 03/14/2014

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS

Employer : K & M EQUIPMENT INC - 4249450

Pension Fund

PERIOD : 12/30/2001 - 12/31/2011

Controlled Group as of : 12/29/2012

PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| 4249450 - K & M EQUIPMENT INC | | | | | | | |
| 5418000 - 0100 - 00179A | | | | | | | |
| MIDWEST UNDERGROUND INC | 2011 | $758.34 | 3 | 0 | 0 | 0.00 | 3.00 |
| 5418000 - 0100 - 00346A | | | | | | | |
| MIDWEST UNDERGROUND INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $34,647.70 | 0 | 0 | 0 | 7,786.00 | 194.65 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2011 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| 5418000 - 0100 - 00371A | | | | | | | |
| MIDWEST UNDERGROUND INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $3,691.80 | 0 | 0 | 126 | 0.00 | 25.20 |
| | 2008 | $66,221.40 | 0 | 0 | 2142 | 0.00 | 428.40 |
| | 2009 | $30,465.60 | 0 | 0 | 924 | 0.00 | 184.80 |
| | 2010 | $16,032.00 | 0 | 0 | 451 | 0.00 | 90.20 |

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS

Employer : K & M EQUIPMENT INC - 4249450

Pension Fund

PERIOD : 12/30/2001 - 12/31/2011

Controlled Group as of : 12/29/2012

## PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| *4249450 - K & M EQUIPMENT INC* | | | | | | | |
| 5418000 - 0100 - 003771A | 2011 | $14,010.00 | 0 | 0 | 369 | 0.00 | 73.80 |
| MIDWEST UNDERGROUND INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| 5418000 - 0100 - 00445A | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| MIDWEST UNDERGROUND INC | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $12,573.00 | 0 | 0 | 0 | 1,980.00 | 49.50 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2011 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| 5418000 - 0100 - 00455A | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| MIDWEST UNDERGROUND INC | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $412.80 | 0 | 0 | 0 | 172.00 | 4.30 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |

As of date : 03/14/2014

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS

Employer : K & M EQUIPMENT INC - 4249450

Pension Fund

PERIOD : 12/30/2001 - 12/31/2011

Controlled Group as of : 12/29/2012

## PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| *4249450 - K & M EQUIPMENT INC* | | | | | | | |
| 5418000 - 0100 - 00455A<br>MIDWEST UNDERGROUND INC | 2011 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| 5418000 - 0100 - 00491A<br>MIDWEST UNDERGRROUND INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2011 | $3,755.73 | 0 | 0 | 0 | 920.52 | 23.01 |
| 5418000 - 0100 - 00541A<br>MIDWEST UNDERGROUND INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |

As of date : 03/14/2014

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS

Employer : K & M EQUIPMENT INC - 4249450

Pension Fund

PERIOD : 12/30/2001 - 12/31/2011

Controlled Group as of : 12/29/2012

## PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| 4249450 - K & M EQUIPMENT INC | | | | | | | |
| 5418000 - 0100 - 00541A | 2011 | $1,734.30 | 0 | 0 | 0 | 423.00 | 10.58 |
| MIDWEST UNDERGROUND INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| 5418000 - 0100 - 00585A | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| MIDWEST UNDERGROUND INC | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $118,189.32 | 0 | 0 | 0 | 25,582.08 | 639.55 |
| | 2011 | $167,482.01 | 0 | 0 | 0 | 36,251.51 | 906.29 |
| 5418000 - 0100 - 00600A | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| MIDWEST UNDERGROUND INC | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |

As of date : 03/14/2014

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS

Employer : K & M EQUIPMENT INC - 4249450

Pension Fund

PERIOD : 12/30/2001 - 12/31/2011

Controlled Group as of : 12/29/2012

PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| *4249450 - K & M EQUIPMENT INC* | | | | | | | |
| 5418000 - 0100 - 00600A MIDWEST UNDERGROUND INC | 2011 | $1,820.40 | 0 | 0 | 0 | 444.00 | 11.10 |
| 5418000 - 0100 - 00682A MIDWEST UNDERGROUND INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2011 | $971.70 | 0 | 0 | 0 | 237.00 | 5.93 |
| 5418000 - 0100 - 00722B MIDWEST UNDERGROUND INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $530.80 | 4 | 0 | 0 | 0.00 | 4.00 |
| | 2007 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |

As of date : 03/14/2014

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS
## Employer : K & M EQUIPMENT INC  -  4249450
### Pension Fund
PERIOD : 12/30/2001 - 12/31/2011
Controlled Group as of : 12/29/2012
PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| *4249450 - K & M EQUIPMENT INC* | | | | | | | |
| 5418000 - 0100 - 00722B | 2011 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| MIDWEST UNDERGROUND INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| 5418000 - 0100 - 00916A | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| MIDWEST UNDERGROUND INC | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $495.00 | 0 | 0 | 0 | 90.00 | 2.25 |
| | 2011 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| Total for Employer: | | $477,949.70 | 50 | 0 | 4012 | 73886.11 | 2699.55 |
| Total for Employer: | | $796,458.20 | 128 | 0 | 13775 | 73886.11 | 4730.15 |

As of date : 03/14/2014

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS

Employer : K & M EQUIPMENT INC  - 4249450

Pension Fund

PERIOD : 12/30/2012 - 12/28/2013
Controlled Group as of : 12/28/2013

## PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - SUMMARY

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| 4249450 - K & M EQUIPMENT INC | | | | | | | |
| | 2013 | $50,297.70 | 0 | 0 | 1217 | 0.00 | 243.40 |
| Totals for Employer: | | $50,297.70 | 0 | 0 | 1217 | 0.00 | 243.40 |

Page 1 of 1

As of date : 03/14/2014

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS

Employer : K & M EQUIPMENT INC - 4249450

Pension Fund

PERIOD : 12/30/2012 - 12/28/2013

Controlled Group as of : 12/28/2013

PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| 4249450 - K & M EQUIPMENT INC | | | | | | | |
| 4249450 - 0100 - 00371A | 2013 | $34,948.50 | 0 | 0 | 845 | 0.00 | 169.00 |
| K & M EQUIPMENT INC | | | | | | | |
| 4249450 - 0100 - 00371B | 2013 | $15,349.20 | 0 | 0 | 372 | 0.00 | 74.40 |
| K & M EQUIPMENT INC | | | | | | | |
| Total for Employer: | | $50,297.70 | 0 | 0 | 1217 | 0.00 | 243.40 |
| | | | | | | | |
| Total for Employer: | | $50,297.70 | 0 | 0 | 1217 | 0.00 | 243.40 |

As of date : 03/14/2014

Page 1 of 1

## PROCEDURES TO REQUEST REVIEW BEFORE THE
## WITHDRAWAL LIABILITY REVIEW COMMITTEE
## <u>PURSUANT TO SECTION 6(a) OF APPENDIX E</u>

An Employer may seek formal review of the determination of withdrawal liability under the provisions of the Employee Retirement Income Security Act of 1974, ("ERISA") as amended.

This request for review must be made within ninety (90) days after an Employer receives a Notice and Demand for payment of Withdrawal Liability from the Central States, Southeast and Southwest Areas Pension Fund (the "Fund").

At the time of request, the subject Employer must explicitly recite, in writing, any alleged inaccuracies or areas of dispute. Any information submitted must be supported by affidavit of the Employer or its legal representative. The following information, where applicable, must be supplied as part of the request for review:

- Identification of any controlled group of which the Employer is a member. If any member of the controlled group has participated in the Pension Plan at any time since January 31, 1975, identify those members and their Billing account numbers;

- Provide a complete copy of the Employer's most recent Annual Report and Securities and Exchange Commission's Form 10-K (with all attachments) for each such member of the controlled group. If the employer is not subject to SEC jurisdiction, supply a copy of the most closely comparable State filing, financial statement, or similar document;

- Contribution/employment history records, schedules, exhibits, financial statements, etc., supporting Employer's position;

- Articles of Incorporation or other notarized corporate filings evidencing a corporate name change;

- Copies of any and all agreements, complete with signature pages, evidencing a sale of assets, corporate reorganization, merger or stock purchase;

- Copies of any Strike Settlement Agreement or Notices or Orders from the National Labor Relations Board pertaining to decertification of the Union or bargaining out of the Fund;

- Any other information the Employer maintains would support its request for review.

The review and <u>all</u> subsequent procedures in that regard will be limited to the materials offered by the Employer in this request, and no claims, objections, or defenses will be considered if they are not presented at this time.

Should the Employer fail to make a timely-request for review, the Board of Trustees will deem that said Employer has fully accepted the withdrawal liability assessment as stated.

The Board of Trustees further reserves the right to seek any legal remedies necessary to protect the Fund and assure its compliance with ERISA and all its requirements.

# Central States, Southeast and Southwest Areas Pension Plan



RESTATED PLAN EFFECTIVE JANUARY 1, 1985
AS AMENDED THROUGH MAY 1, 2012

**APPENDIX E.**     **RULES AND REGULATIONS PERTAINING TO EMPLOYER WITHDRAWAL LIABILITY**

**Section 1.**     **PREAMBLE**

This APPENDIX E to the Central States, Southeast and Southwest Areas Pension Plan (the "Plan") sets forth and describes rules and regulations applicable to the determination and payment of Employer Withdrawal Liability pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), as amended by the Multiemployer Pension Plan Amendments Act of 1980 (the "1980 Act"). The term Employer, as used herein, shall be defined as in ERISA and trades and businesses under common control shall constitute a single Employer as provided under ERISA Section 4001(b). Further, the term Employer refers to both Old Employers and New Employers (as defined in Sections 2.2(a) and 2.2(b), respectively) unless otherwise indicated.

**Section 2.**     **CALCULATION OF WITHDRAWAL LIABILITY**

**Section 2.1     Effective Date**

The amount of the unfunded vested benefits allocable to an Employer who withdraws from the Plan on or after October 14, 2011 and who is defined as an "Old Employer" under Section 2.2(a) shall be determined in accordance with Section 2.3. The amount of the unfunded vested benefits allocable to an Employer who withdraws from the Plan on or after October 14, 2011 and who is defined as a "New Employer" under Section 2.2(b) shall be determined in accordance with Section 2.4. The amount of unfunded vested benefits allocable to an Employer who withdraws from the Plan at any time before October 14, 2011 shall be determined in accordance with Section 2 of this Appendix E as in effect on October 13, 2011.

**Section 2.2     Definitions**

(a)     **Old Employer** means any Employer who had an obligation to contribute to the Plan for any period prior to October 14, 2011 and all other trades or businesses under common control with said Employer at any time such that together they constituted a single employer within the meaning of Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), and the regulations promulgated thereunder. The term "Old Employer" includes an Employer and all other trades or businesses who withdrew from the Plan prior to October 14, 2011.

(b)     **New Employer** means any Employer who satisfies either of the conditions set forth in paragraphs (1) or (2) below:

(1)     The Employer has never been an Old Employer or a trade or business under common control with an Old Employer at any time such that together they constituted a single employer within the meaning of Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), and the regulations promulgated thereunder; or

(2)     To the extent the Employer first had an obligation to contribute to the Plan before October 14, 2011 or has ever been considered an Old Employer, the Employer has completely satisfied all withdrawal liability related to its past participation in a lump sum or has provided the Pension Fund with a bond issued by a corporate surety company that is an acceptable surety for purposes of ERISA section 412, or an amount held in escrow by a

117

bank or similar financial institution satisfactory to the Pension Fund for the full amount of the outstanding withdrawal liability.

(3)    An Employer satisfying paragraph (1) of this subsection shall be a New Employer on the date its obligation to contribute to the Plan begins. An Employer satisfying paragraph (2) of this subsection shall cease being an Old Employer and shall become a New Employer on the date all of the conditions specified in paragraph (2) are met.

(4)    An Old Employer who is or may be obligated under Section 4204 of ERISA, 29 U.S.C. § 1384, as a seller or purchaser, including without limitation the bonding or escrow requirements of Sections 4204(a)(1)(B) and 4204(a)(3) of ERISA, 29 U.S.C. §§ 1384(a)(1)(B) and 1384(a)(3), as well as the liability provisions of Section 4204(a)(1)(C) and 4204(a)(2), 29 U.S.C. §§ 1384(a)(1)(C) and 1384(a)(2), remains subject to those obligations notwithstanding the fact that the Old Employer becomes a New Employer.

(c)    **Modified Presumptive Pool** means the pool of assets and associated benefit liabilities relating to Contributions from Old Employers.

(d)    **Direct Attribution Pool** means the pool of assets and associated benefit liabilities relating to New Employer Contributions.

(e)    **New Employer Contributions** means contributions made by New Employers which are attributable to Participants' service with such Employer for periods during which the Employer qualifies as a New Employer under Section 2.2(b) plus contributions made by an Old Employer during the Plan Year in which such Old Employer becomes a New Employer.

(f)    **Modified Presumptive Pool Unfunded Vested Benefits** means all unfunded vested benefits under the Plan minus the Direct Attribution Pool Unfunded Vested Benefits minus the sum of all New Employer's Directly Attributable Unfunded Vested Benefits as calculated under Section 2.4(b).

(g)    **Direct Attribution Pool Unfunded Vested Benefits** means all unfunded vested benefits in the Direct Attribution Pool as calculated in Section 2.4(e).

(h)    **Plan Year** means the calendar year beginning and including January 1st through and including December 31st.

(i)    The definitions applicable to the Appendix E include all definitions stated in Article I and other definitions of the Pension Plan, except to the extent those definitions are contrary to those expressly stated in this Appendix E.

118

**Section 2.3**     **Calculation of Withdrawal Liability of an Old Employer**

The amount of the unfunded vested benefits allocable to an Old Employer who withdraws from the Plan shall be the product of:

(a)     an amount equal to:

    (1)     the Modified Presumptive Pool Unfunded Vested Benefits as of the end of the Plan Year preceding the Plan Year in which the Old Employer withdraws; less

    (2)     the sum of the value as of such date of all outstanding claims for withdrawal liability of Old Employers which can reasonably be expected to be collected, with respect to Old Employers withdrawing before such Plan Year; multiplied by

(b)     a fraction:

    (1)     the numerator of which is the total amount required to be contributed under the Plan by the Old Employer for the last 10 Plan Years ending before the date on which the Old Employer withdraws; and

    (2)     the denominator of which is the total amount contributed under the Plan by all Old Employers for the last 10 Plan Years ending before the date on which the Old Employer withdraws, increased by the amount of any Old Employer Contributions owed with respect to earlier periods which were collected in those Plan Years, and decreased by any amount contributed by an Old Employer who withdrew from the Plan during those Plan Years;

**Section 2.4**     **Calculation of Withdrawal Liability of a New Employer**

(a)     **New Employer's Unfunded Vested Benefit Allocation.** The amount of the unfunded vested benefits allocable to a New Employer who withdraws from the Plan shall be the sum of:

    (1)     the New Employer's Unfunded Vested Benefits Attributable to Its Participants' Service (determined as of the end of the Plan Year preceding the Plan Year in which the New Employer withdraws, and as described in subsection (b) below); and

    (2)     the New Employer's Proportionate Share of the Direct Attribution Pool's Unfunded Vested Benefits (determined as of the end of the Plan Year preceding the Plan Year in which the New Employer withdraws) as described in subsection (f) below.

(b)     **New Employer's Unfunded Vested Benefits Attributable to Its Participants' Service.** A New Employer's Unfunded Vested Benefits Attributable to Its Participants' Service is equal to the value of nonforfeitable benefits under the Plan which are attributable to Participants' service with such New Employer (including service based upon contributions deemed New Employer Contributions under Section 2.2(b)) decreased by the New Employer's Share of the Direct Attribution Plan Assets which is allocated to the New Employer under Section 2.4(d). The amount equal to the value of nonforfeitable benefits under the Plan which are attributable to a Participants' service with such New Employer

119

shall be determined by multiplying the Participant's nonforfeitable benefits by a fraction the numerator of which is the Participant's Contributory Service Credit earned with such New Employer (including Contributory Service Credit earned with an Old Employer during the Plan Year in which such Old Employer becomes a New Employer) and the denominator of which is the Participant's total years of Contributory Service Credit earned with all Employers. To the extent that the New Employer's Unfunded Vested Benefits Attributable to Its Participants' Service is less than zero, the New Employer's Directly Attributable Unfunded Vested Benefits shall be deemed to be zero.

(c)     **Direct Attribution Pool Plan Assets.** The value of Direct Attribution Pool Plan Assets determined under this Section 2.4(c) (a portion of which is to be allocated to the New Employer as provided under Section 2.4(d)) is the sum of: all New Employer Contributions made for each Plan Year preceding the Plan Year in which the New Employer withdraws, plus all withdrawal liability payments made by New Employers for withdrawals occurring as New Employers for each Plan Year preceding the Plan Year in which the New Employer withdraws, plus investment earnings or losses for each Plan Year preceding the Plan Year in which the New Employer withdraws attributable as provided under Section 2.4(c)(1), minus administrative expenses for each Plan Year preceding the Plan Year in which the New Employer withdraws attributable as provided under Section 2.4(c)(2), minus all benefit payments which are made for each Plan Year preceding the Plan Year in which the New Employer withdraws that are attributable to service with New Employers as provided under Section 2.4(c)(3).

(1)     Investment earnings or losses attributable to the Direct Attribution Plan Pool Plan Assets shall be calculated for each Plan Year by applying the rate of return or loss on all Plan assets for each Plan Year beginning after October 14, 2011 and ending with the last day of the Plan Year prior to the Plan Year of the New Employer's withdrawal to the amount of Direct Attribution Plan Pool Plan Assets (after the application of paragraphs (2) and (3) of this subsection (c)) as of the last day of the Plan Year preceding the Plan Year in which the New Employer withdraws. For the Plan Year that includes October 14, 2011, the rate of return or loss shall be applied proportionate to the period after October 14, 2011 as compared to the entire Plan Year.

(2)     Administrative expenses attributable to the Direct Attribution Pool Plan Assets shall be calculated for each Plan Year beginning after October 14, 2011 and ending with the last day of the Plan Year prior to the Plan Year of the New Employer's withdrawal by multiplying the total Plan administrative expenses for a Plan Year by a fraction the numerator of which is the total number of Participants whose last Contributory Service Credit earned under the Plan as of the last day of the Plan Year was earned with a New Employer and the denominator is the total number of Participants in the Plan as of the last day of the Plan Year. For the Plan Year that includes October 14, 2011, the administrative expenses shall be applied proportionate to the period after October 14, 2011 as compared to the entire Plan Year.

(3)     Benefit payments that are attributable to service with New Employers shall mean the pro rata portion of a Participant's benefits determined by multiplying the benefit payments by a fraction the numerator of which is the Participant's years of Contributory Service Credit earned with New

Employers (including a Participant's Contributory Service Credit with an Old Employer during the Plan Year in which such Participant's Old Employer becomes a New Employer) and the denominator of which is the Participant's total years of Contributory Service Credit earned with all Employers.

(d) **New Employer's Share of Direct Attribution Pool Plan Assets.** The New Employer's Share of Direct Attribution Pool Plan Assets shall be determined by multiplying the value of the Direct Attribution Pool Plan Assets determined under Section 2.4(c) by the fractions in subparagraphs (d)(1) and (d)(2) of this subsection -

    (1) The first fraction –

        (i) the numerator of which is the value of nonforfeitable benefits (including such benefits attributable to contributions deemed New Employer Contributions under Section 2.2(b)) which are attributable to Participants' service with all New Employers who have an obligation to contribute under the Plan in the Plan Year preceding the Plan Year in which the New Employer withdraws, and

        (ii) the denominator of which is the value of all nonforfeitable benefits (including such benefits attributable to contributions deemed New Employer Contributions under Section 2.2(b)) attributable to all New Employers under the Plan; and

    (2) The second fraction –

        (i) the numerator of which is the value of the nonforfeitable benefits (including such benefits attributable to contributions deemed New Employer Contributions under Section 2.2(b)) which are attributable to the New Employer, and

        (ii) the denominator of which is the value of the nonforfeitable benefits (including such benefits attributable to contributions deemed New Employer Contributions under Section 2.2(b)) which are attributable to service with all New Employers who have an obligation to contribute under the Plan in the Plan Year preceding the Plan Year in which the New Employer withdraws.

(e) **Direct Attribution Pool's Unfunded Vested Benefits.** The amount of the Direct Attribution Pool's Unfunded Vested Benefits for a Plan Year preceding the Plan Year in which a New Employer withdraws is equal to:

    (1) an amount equal to –

        (i) The value of all nonforfeitable benefits attributable to service with all New Employers (including such benefits attributable to contributions deemed New Employer

121

Contributions under Section 2.2(b)) under the Plan at the end of such Plan Year; reduced by

    (ii)    The value of nonforfeitable benefits under the Plan at the end of such Plan Year which are attributable to Participants' service with New Employers (including such benefits attributable to contributions deemed New Employer Contributions under Section 2.2(b)) who have an obligation to contribute under the Plan for such Plan Year; reduced by

    (2)    an amount equal to –

    (i)    The value of the Direct Attribution Pool Plan Assets as of the end of such Plan Year as determined under Section 2.4(c), reduced by

    (ii)    The value of the Direct Attribution Pool Plan Assets as of the end of such Plan Year as determined under Section 2.4(c) multiplied by the fraction in Section 2.4(d)(1); reduced by

    (3)    The value of all outstanding claims for withdrawal liability which can reasonably be expected to be collected with respect to New Employers withdrawing before the Plan Year preceding the Plan Year in which the New Employer withdraws.

If the Direct Attribution Pool's Unfunded Vested Benefits is less than zero, it shall be deemed to be zero.

    (f)    **New Employer's Proportionate Share of the Direct Attribution Pool's Unfunded Vested Benefits.** The New Employer's Proportionate Share of the Direct Attribution Pool Unfunded Vested Benefits described in Section 2.4(a)(2) for a Plan Year is the amount determined under Section 2.4(e) multiplied by a fraction-

    (1)    the numerator of which is the value of the nonforfeitable benefits (including such benefits attributable to contributions deemed New Employer Contributions under Section 2.2(b)) which are attributable to the New Employer, and

    (2)    the denominator of which is the value of the nonforfeitable benefits (including such benefits attributable to contributions deemed New Employer Contributions under Section 2.2(b)) which are attributable to service with all New Employers who have an obligation to contribute under the Plan in the Plan Year preceding the Plan Year in which the New Employer withdraws.

### Section 2.5    Effect of Complete Withdrawal of All Old Employers

If all Old Employers completely withdraw from the Pension Fund, the Direct Attribution Pool and the Modified Presumptive Pool shall be discontinued and the amount of unfunded vested benefits allocable to an Employer that withdraws from the Pension Fund at any time beginning with the first day of the Plan Year in which all Old Employers

cease to be obligated to contribute to the Fund shall be determined in accordance with Section 2 of this Appendix E as in effect on October 13, 2011 (the "Pre-2011 Methodology").

### Section 2.6    Effect of Complete Withdrawal of All New Employers

If in any Plan Year all New Employers completely withdraw from the Pension Fund, the Direct Attribution Pool and the Modified Presumptive Pool shall be discontinued and the amount of unfunded vested benefits allocable to an Employer that withdraws in the following Plan Year shall be determined in accordance with Section 2 of this Appendix E as in effect on October 13, 2011 (the "Pre-2011 Methodology").

### Section 2.7    Trustee Determinations

The determinations pursuant to Section 2 of this Appendix E and Section 4202 of ERISA shall be based upon authorization by the Board of Trustees, except that any such determination may be initially authorized between board meetings by action of at least one Employer Trustee and at least one Employee Trustee (which action is to be recorded in a written document) provided such action is ratified by the Board of Trustees at its next meeting.

### Section 3.    SPECIAL RULES WITH RESPECT TO EMPLOYER CONTRIBUTIONS

For purposes of determining the denominator defined at Sections 2.3(b)(2), 2.4(d)(2), 2.4(e)(3)(ii), and 2.4(f)(2), the amount of Employer Contributions "made" or "contributed" with respect to a Plan Year shall be based upon the amount of Employer Contributions reported on the Form 5500 filed by the Plan for such Plan Year.

### Section 4.    ACTUARIAL ASSUMPTIONS

The actuarial assumptions used to determine the unfunded vested benefits of the Plan shall be determined by the Plan actuary based on his/her best estimate and in accordance with ERISA § 4213.

### Section 5.    PAYMENT OF WITHDRAWAL LIABILITY

(a)    The amount of payment shall be calculated as follows:

     (1)    Except as provided in (2) and (4) below, and in (c) and (d) below; the Employer shall pay the amount determined under Section 2 of this Appendix E appropriately adjusted for partial withdrawal and de minimis reductions of $50,000 or less as provided in ERISA Sections 4206 and 4209(a), over the period of years required to amortize the amount in level annual payments determined under (3) below, calculated as if the first payment were made on the first day of the Plan year following the Plan Year in which the withdrawal occurs and as if each subsequent payment were made on the first day of each subsequent Plan Year. Such amortization period shall be determined based on actuarial assumptions used in the most recent actuarial valuation of the Plan.

     (2)    If the amortization period described in (1) above exceeds 20 years, the liability of the Employer shall be limited to the first 20 annual payments determined in (3) below.

(3)    Except as provided in (5) below, the amount of each annual payment shall be the product of:

    (A)    the average number of weeks of contributions for the three consecutive Plan Years, during the 10 consecutive Plan Years ending before the date of withdrawal, in which the Employer had an obligation to contribute to the Plan for the greatest number of weeks of contributions; and

    (B)    the highest contribution rate at which the Employer had an obligation to contribute to the Plan during the 10 Plan Years ending with the Plan Year in which the withdrawal occurs.

(4)    In the event of a withdrawal of all or substantially all Employers which contribute to the Plan (as described in Section 4219(c)(1)(D) of ERISA) (2) above shall not apply, and total unfunded vested benefits shall be allocated among all such Employers according to regulations established by the Pension Benefit Guaranty Corporation (the "PBGC").

(5)    As described in Section 4219(c)(1)(E) of ERISA, the amount of annual payment may be adjusted in the event of a partial withdrawal.

(b)    Withdrawal liability shall be payable monthly, according to the schedule determined by the Trustees. Payment of withdrawal liability shall commence no later than 60 days after demand is made therefore by the Trustees.

(c)    An Employer shall be entitled to prepay his withdrawal liability and accrued interest without penalty.

(d)    Non-payment by an Employer of any amounts due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on withdrawal liability owed to the Fund from the date when the payment was due to the date when the payment is made together with all expenses of collection incurred by the Trustees, including but not limited to attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer, in accordance with the preceding sentence, shall be computed and charged to the Employer at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA (New York, New York) for the fifteenth (15th) day of the month for which the interest is charged. Any judgment against an Employer for withdrawal liability payments owed to this Fund, shall include the greater of (a) a doubling of interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid withdrawal liability payments. The interest rate after entry of a judgment against an Employer for withdrawal liability shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA (New York, New York) for the fifteenth (15th) day of the month for which the interest is charged and shall be compounded annually.

(e)    In the event of a default, the outstanding amount of the withdrawal liability shall immediately become due and payable. A default occurs if:

124

(1)     the Employer fails to make, when due, any payments of withdrawal liability, if such failure is not cured within 60 days after such Employer receives written notification from the Fund of such failure; or

(2)     the Trustees, in their discretion, deem the Fund insecure as a result of any of the following events with respect to the Employer:

    (A)     the Employer's insolvency, or any assignment by the Employer for the benefit of creditors, or the Employer's calling of a meeting of creditors for the purpose of offering a composition or extension to such creditors, or the Employer's appointment of a committee of creditors or liquidating agent, or the Employer's offer of a composition or extension to creditors,

    (B)     the Employer's failure or inability to pay its debts as they become due;

    (C)     the commencement of any proceedings by or against the Employer (with or without the Employer's consent) pursuant to any bankruptcy or insolvency laws or any laws relating to the relief of debtors, or the readjustment, composition or extension of indebtedness, or to the liquidation, receivership, dissolution or reorganization of debtors;

    (D)     the withdrawal, revocation or suspension, by any governmental or judicial entity or by any national securities exchange or association, of any charter, license, authorization, or registration required by the Employer in the conduct of its business;

    (E)     the cessation of all or substantially all of an Employer's operations, or the liquidation of all or substantially all of an Employer's assets;

    (F)     the existence of a delinquency in any amount owed to the Pension Fund including, without limitation, the payment of contributions or prior withdrawal liability; or

    (G)     any other event or circumstance which in the judgment of the Trustees materially impairs the Employer's credit worthiness or the Employer's ability to pay its withdrawal liability when due.

## Section 6.     RESOLUTION OF DISPUTES

Any dispute concerning whether a complete or partial withdrawal has occurred, concerning the amount and/or payment of any withdrawal liability or any other matter pertaining to ERISA Sections 4201 through 4129 and ERISA Section 4225 will be resolved in the following manner:

    (a)     REVIEW BY THE FUND: If, within ninety (90) days after an Employer receives a notice and demand for payment of withdrawal liability from the Fund, such Employer in writing to the Fund (i) requests a review of any specific matter relating to the determination of such liability and the schedule of payments, (ii) identifies any inaccuracy in the determination of the amount of the unfunded vested benefits allocable to the Employer, or (iii) furnishes any additional relevant information to the Fund, a review may be conducted by the Withdrawal Liability Review Committee. The Withdrawal Liability Review Committee consists of members of Staff of the Fund selected by the Executive Director of the Fund. The Withdrawal Liability Review Committee is responsible for the review of any matter pertaining to withdrawal liability which is timely made and the

125

recommendation for decisions on such matters to the Trustees. This Committee acts by a majority of its members present and voting in making recommendations regarding the action which the Trustees may follow in determining questions of withdrawal liability. The decision of the Trustees may be communicated in writing to the Employer including the basis for the decision and the reason(s) for any change in the determination of an Employer's liability or schedule for liability payments.

(b) ARBITRATION: Within 60 days following the earlier of receipt of a written decision from the Trustees in accordance with subparagraph (a) above, or 120 days after an Employer has made a timely written request for a review of such withdrawal liability matters specified above, either the Employer or the Fund may initiate an arbitration proceeding as provided herein.

(1) Manner of Initiation: Arbitration is initiated by written notice to the Chicago Regional Office of the American Arbitration Association ("AAA") with copies to the Fund (or if initiated by the Fund to the Employer) and the bargaining representative (if any) of the affected employees of the Employer. Such arbitration will be conducted, except as otherwise provided in these rules, in accordance with the "Multiemployer Pension Plan Arbitration Rules" (the "AAA Rules") administered by the AAA. The initial filing fee is to be paid by the party initiating the arbitration proceeding. Arbitration is timely initiated if received by the AAA along with the initial filing fee within the time period prescribed by ERISA Section 4221(a)(1).

(2) Venue: All arbitrations under this Section shall be conducted in Chicago, Illinois. Any actions pursuant to ERISA §4221(b)(2), 29 U.S.C. §1401(b)(2), to enforce, vacate or modify any awards entered in such arbitrations shall be filed in the United States District Court for the Northern District of Illinois, Eastern Division.

(3) Preliminary Statements: The Employer shall file with the AAA and serve upon the Fund at least 21 days prior to the hearing a Preliminary Statement. The Plan shall file with the AAA and serve upon the Employer a responsive Preliminary Statement at least seven days prior to the hearing. Each preliminary statement shall contain: (1) a statement of the factual and legal contentions of the party with respect to each of the issues before the arbitrator; (2) a list identifying the name, address, and occupation of each witness to be called by the party at the hearing and a specific description of the matters upon which the witness will testify; (3) a list describing each exhibit which the party will offer in evidence; and (4) a statement of the relief sought by the party.

(c) LITIGATION: Section 43(c) of the AAA Rules shall not apply. Within 30 days after the issuance of a final award by an arbitrator in accordance with these procedures, any party to such arbitration proceeding may bring an action in an appropriate United States district court to enforce, modify, or vacate the arbitration award, in accordance with ERISA Sections 4221 and 4301.

## Section 7.   CONSTRUCTION INDUSTRY EXEMPTION

ERISA section 4203(b) shall apply to those Employers described in ERISA section 4203(b)(1).

126

**Section 8.**   **FIVE-YEAR FREE LOOK RULE**

(a)     Pursuant to ERISA Section 4210, 29 U.S.C. §1390, an employer who withdraws from the Plan in a complete or partial withdrawal is not liable to the Plan if the Employer:

      (1)     first had an obligation to contribute to the Plan after September 26, 1980;

      (2)     had an obligation to contribute to the Plan for no more than 5 consecutive plan years preceding the date of its withdrawal;

      (3)     was required to make contributions to the Plan for each such plan year in an amount equal to less than 2 percent of the sum of all employer contributions made to the Plan for each such year as reported on the Form 5500 filed by the Plan for each such year; and

      (4)     has never avoided withdrawal liability because of the application of this Section 8 of Appendix E.

(b)     Paragraph (a) of this section shall apply to an Employer with respect to the plan only if -

      (1)     the plan is not a plan which primarily covers employees in the building and construction industry;

      (2)     the plan makes this exception applicable (as it has in paragraph (a) of this section);

      (3)     the plan provides (as it does in Appendix G, section (a)(5)) that the reduction under §411(a)(3)(E) of the Internal Revenue Code of 1954 applies with respect to the employees of the Employer; and

      (4)     the ratio of the assets of the plan for the plan year preceding the first plan year for which the Employer was required to contribute to the plan to the benefit payments made during that plan year was at least 8 to 1.

**Section 9.**   **ADJUSTMENT OF LIABILITY FOR WITHDRAWAL SUBSEQUENT TO PARTIAL WITHDRAWAL**

The amount of credit an Employer receives for payment of a prior year's partial withdrawal liability is determined in accordance with applicable regulations (29 CFR §4206). Pursuant to 29 CFR §4206, the amortization period defined at 29 CFR §4206.9 shall be ten years. A New Employer shall not be entitled to credit for any prior withdrawal liability incurred as an Old Employer.

**Section 10.**   **NO REDUCTION OR WAIVER OF LIABILITY FOR NEW EMPLOYER**

An Employer shall not be entitled to a reduction or waiver of withdrawal liability under ERISA sections 4207 or 4208 based upon the payment of withdrawal liability as an Old Employer for its resumption or continuation of participation in the Pension Fund as a New Employer.

F:387322 / 01096280 / 05/01/2012

Appendix E (Page 11 of 11)

# EXHIBIT E



# Akin Gump

STRAUSS HAUER & FELD LLP

**ELIZABETH CYR**
202.887.4518/fax: 202.887.4288
ecyr@akingump.com

October 30, 2015

**VIA OVERNIGHT DELIVERY**

Trustees of the
Central States Southeast and
Southwest Areas Pension Fund
c/o Mr. Christopher R. Brown
9377 West Higgins Road
Rosemont, IL 60018-4938

Re: Request for Review of Notice and Demand For Payment of Withdrawal Liability
K&M Equipment, Inc. / Midwest Underground, Inc.
Assessment No. 4249450 – WL 140020-01
Withdrawn Account Nos. 5418000-0100

To Trustees of the Fund:

We serve as counsel to Midwest Underground, Inc. ("MWU") and all members of any controlled group of trades or business, as defined in Section 4001(b)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") (collectively, the "Company"). MWU is a member of the Pipe Line Contractors Association ("PLCA").

In a letter dated March 14, 2014, Mr. Christopher R. Brown, on behalf of the Central States, Southeast and Southwest Areas Pension Fund (the "Fund"), asserted that the Company owes a total of $1,961,713.07 to the Fund as the result of a partial withdrawal from the Fund (the "Demand").

As of the date of the Demand, MWU was a counter-claimant in the related litigation *Michels et al. v. Central States, Southeast and Southwest Areas Pension Fund, et al.* pending in federal court. The PLCA, on behalf of its approximately 75 members, was also, at all relevant times, a party in the case. As you are well aware, the PLCA, on behalf of all of its members, sought a declaratory judgment that the obligation to contribute to the Fund for all PLCA members terminated in 2011 such that all PLCA members withdrew from the Fund at that time. The Fund filed counterclaims against more than 30 PLCA members, including MWU, seeking to collect allegedly delinquent contributions for post-2011 periods. On September 2, 2015 the U.S.



**Akin Gump**
STRAUSS HAUER & FELD LLP

Trustees of the
Central States Southeast and
Southwest Areas Pension Fund
October 30, 2015
Page 2

Court of Appeals for the Seventh Circuit resolved the dispute in PLCA's favor finding that the actions taken by PLCA members, including MWU, in November 2011 were sufficient to terminate the obligation of those employers to contribute to the Fund.

Given that the primary issue in dispute in *Michels* was the date that PLCA members, including MWU, withdrew from the Fund – which is also a significant and material basis for review of the Demand (as set out in detail below) – the statutory deadlines under Sections 4219 and 4221 of ERISA were clearly tolled during the pendency of the *Michels* litigation and remained tolled until the dispute was meaningfully resolved on September 2, 2015. Thus, the Company's request for review is due December 1, 2015.[1]

The Company has been making the payments under the schedule set forth in the Demand, but contests the amount of the assessment on several grounds, as summarized below. Pursuant to Section 4219(b)(2) of ERISA, we hereby submit this written request that the Fund review its determination, including, but not limited to, the specific matters outlined below. We also request additional information necessary to further assess the Fund's determination. Note that this request for review is based on the factual record now available to the Company, and additional factual development may reveal additional issues. In any case, however, our failure to request review of any issues does not in any way constitute a waiver of our right to raise such issues at a later point in time.

1. **Withdrawal Date.** The 2012 date of withdrawal used by the Fund to calculate the Demand is erroneous and in direct conflict with the clear and unambiguous holding of the Seventh Circuit in *Michels*. As determined by the Court, the Fund's use of a 2012 withdrawal date was arbitrary and capricious and resulted in a greatly overstated amount of withdrawal liability due from the Company. The Company delivered proper written notice to the Fund on November 16, 2011 that its obligation to contribute to the Fund had ceased on November 15, 2011, pursuant to its agreement with the Union. This notice was delivered in accordance with the documents governing the Fund and all applicable rules of the Fund. As a result, the Company withdrew from the Fund in November 2011, consistent with the Seventh Circuit's ruling, and its withdrawal liability must be recalculated based upon the Fund's unfunded vested benefits (reduced as provided below), employer contributions and other data as of December 31, 2010 (we estimate that using the correct 2011 withdrawal date reduces the Company's withdrawal liability significantly). The Company hereby requests such recalculation and asserts

---

[1] Notwithstanding the above, we are simultaneously submitting the Company's demand for arbitration to AAA so as to ensure a timely demand under any tolling scenario.



**Akin Gump**

STRAUSS HAUER & FELD LLP

Trustees of the
Central States Southeast and
Southwest Areas Pension Fund
October 30, 2015
Page 3

that the full amount of all payments made to date should be credited to the recalculated principal with a revised payment schedule based on that amount.

2.    **Statutory Basis for the Partial Withdrawal**. The Fund has failed to provide any explanation as to the statutory basis on which it determined that a partial withdrawal occurred pursuant to Section 4205 of ERISA. The Company hereby requests an explanation as to the basis for the Fund's assessment of a partial withdrawal as contained in the Demand and denies that a partial withdrawal has occurred under any statutory provision.

3.    **Application of the Building and Construction Industry Rule**. Section 4203 of ERISA provides rules specific to determining whether an employer engaged in the building and construction industry has completely withdrawn from a multiemployer pension plan (the "Construction Rule"). Section 4208(d) of ERISA provides a rule for determining whether an employer covered by the Construction Rule is liable for partial withdrawal liability (the "Construction Partial Rule"). The Demand fails to state whether the Company is covered by the Construction Rule and, if so, why the Construction Partial Rule does not exempt the Company from partial withdrawal liability. The Company hereby requests an explanation as to whether the Fund believes the Construction Rule applies to the Demand and, if so, why the Fund believes the Construction Partial Rule did not exempt the Company from partial withdrawal liability. Additionally, the Company requests all documents related to the application of the Construction Partial Rule for other employers that contribute or have contributed to the Fund regardless of whether the application of such rule exempted the employer from partial withdrawal liability or otherwise. Please also provide all arbitration decisions that involve any alleged partial withdrawals from the Fund.

4.    **Disproportionate Assessment**. It is a violation of applicable constitutional principles that the Company's purported "fair share" of the Fund's unfunded vested benefits in the form of the withdrawal liability claimed in the Demand, particularly when added to the contributions the Company has already made to the Fund, is so much greater than either (1) any harm the Company may have caused the participants or the Fund or (2) any benefits the Fund will provide to the employees on behalf of whom the Company made those contributions. We believe that these facts support a valid constitutional challenge to the Fund's mechanical application of the withdrawal liability rules. *See, e.g., Connolly v. PBGC,* 106 S.Ct. 1018, 1028 (1986) (O'Connor, J., concurring) (in certain situations application of MPPAA "may be arbitrary and irrational in the absence of any connection between the employer's conduct and some detriment to the employee.").



**Akin Gump**

STRAUSS HAUER & FELD LLP

Trustees of the
Central States Southeast and
Southwest Areas Pension Fund
October 30, 2015
Page 4

     5.     **Use of Segal Blended Interest Rate.**  The Fund uses the "Segal Blended Interest Rate" to value its liabilities.  The rate is a blend of the Fund's funding rate, *i.e.* the interest rate it uses for ERISA liability purposes and the rate or rates the PBGC uses to value plan liabilities upon plan termination.  The result is a rate that is lower than the Fund's funding rate and thus overstates the Fund's liabilities (and the Company's withdrawal liability).  The Fund should use the same rate for estimating its future liabilities for this purpose as it does for assuming future asset growth.  The Company's withdrawal liability should be recalculated valuing the Fund's liabilities using the Fund's funding rate.

     6.     **Benefit Reductions Upon Withdrawal.**  The Fund has notified employers that it will reduce the vested benefits of participants upon an employer's withdrawal, but that such benefit reductions will not reduce the Fund's unfunded vested benefits or the Company's withdrawal liability.  We understand that pursuant to this policy the Fund has cut back the vested benefits of participants of many employers that have withdrawn from the Fund, but has not reduced the Fund's liabilities to reflect those cutbacks.  Please provide the Company a calculation of the vested liabilities that are included in the withdrawal liability calculation that reflects these benefit cutbacks.  Also, indicate how many of these affected participants have retired or otherwise terminated employment so that their reduced benefits have become fixed.  If our understanding is accurate, the Company's withdrawal liability should be recalculated to eliminate the liabilities associated with such benefit reductions.  These benefits are not considered non-forfeitable benefits under ERISA and, as a result, such benefits must be eliminated from the withdrawal liability calculations.

     7.     **Other Forfeitable Benefits.**  The Fund should eliminate from the withdrawal liability calculation of the Company any death, disability, early retirement subsidy and other adjustable benefits that are not considered non-forfeitable benefits under ERISA.

     8.     **Contribution History of Withdrawn Employers.**  In preparing the Demand, the Fund has eliminated from the "All Employers' Contributions (Last 10 years)" calculations the contribution history of employers that are alleged to have withdrawn from the Fund.  The Company cannot tell from the information provided to it whether the contribution histories of significant contributing employers, such as Yellow Freight, Hostess, Allied and others have been eliminated from the calculations and, if so, when they were eliminated.  To establish whether and, if so, how these contributions have been eliminated from the calculations, the Company hereby requests such information and reserves the right to request a further recalculation of its withdrawal liability if such contribution histories have been improperly treated.



**Akin Gump**

STRAUSS HAUER & FELD LLP

Trustees of the
Central States Southeast and
Southwest Areas Pension Fund
October 30, 2015
Page 5

9.   **Payment Schedule Interest Rate.**  The Fund used an interest rate of 7 ½% to determine the Company's multi-year payment schedule. This is, by current market standards, a very high rate, particularly in light of the fact that the Fund uses the lower Segal Blended Interest Rate, as noted above, to determine the Company's withdrawal liability.  The Company believes the Fund is acting arbitrarily in varying its selection of interest rate assumptions to suit its own best interest.

10.   **Offers of Reduced Risk**.  The Company requests that the Fund provide it with a copy of any offer made to induce an employer to continue as a contributing employer in the Fund by providing for a temporary suspension or reduction of contributions or other relief (*e.g.*, in exchange for a reduction in future withdrawal liability).

11.   **Contribution Rate**.  In determining the Company's Payment Schedule in the Demand, the Fund inaccurately determined that the Company's "Highest Contribution Rate (Weekly Rate Basis)" was $254.00.  This contribution rate exceeds the highest contribution rate contained in the Company's records.  Please provide the basis on which you determined this was the Company's highest contribution rate (weekly rate basis).

12.   **Inaccurate Contribution History**.  The contribution history used by the Fund to prepare the Demand materially differs from the contribution history contained in the Company's records, including but not limited to, the inclusion of disputed audit findings.  Please provide the basis on which you determined the Company's contribution history and verify the accuracy of the contribution information upon which the Fund relied.

We look forward to your prompt response to our request for review.  We reserve all rights to supplement the issues listed herein related to the withdrawal liability calculation in the Demand based upon the discovery of additional facts including, but not limited to, our review of additional documents and information provided by the Fund.

Sincerely yours,

Elizabeth Cyr

cc:   J. Patrick Tielborg, Esq.
Eric Field, Esq.
Thomas Nyhan, Esq.
James Condon, Esq.
Midwest Underground, Inc.

# EXHIBIT F



# Akin Gump
## STRAUSS HAUER & FELD LLP

ELIZABETH CYR
202.887.4518/fax: 202.887.4288
ecyr@akingump.com

October 30, 2015

VIA OVERNIGHT DELIVERY & E-MAIL

American Arbitration Association
150 N. Michigan Avenue, Suite 3050
Chicago, IL 60601
turnerk@adr.org

Re:  Demand for Arbitration

Dear Sir/Madam:

We represent Midwest Underground, Inc. ("MWU") and all members of any controlled group of trades or business, as defined in Section 4001(b)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") (collectively, the "Company"), a former contributing employer to the Central States, Southeast and Southwest Areas Pension Fund (the "Fund"). The Company disputes the Fund's determination of its withdrawal liability (assessment no. 4249450-WL140020-01) and hereby initiates arbitration pursuant to the Multiemployer Pension Plan Arbitration Rules for Withdrawal Liability Disputes, as administered by the American Arbitration Association ("AAA"), the mandatory arbitration provisions of Section 4221 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1401, 29 C.F.R. §4221 and the withdrawal liability rules of the Fund. A copy of the Fund's withdrawal liability demand is attached hereto as Exhibit A. A copy of the Company's request for review dated October 30, 2015 is attached hereto as Exhibit B.[1] A copy of the notice of this Demand for Arbitration served on the Fund and all related parties is also enclosed as Exhibit C.

The Fund has improperly demanded payment of withdrawal liability in the amount of $1,961,713.07 based upon an incorrect withdrawal date from the Fund, among other errors, as more fully detailed in the Company's request for review.

The amount in dispute is in excess of $1,000,000 but less than $5,000,000. A check in the amount of $8,200 is enclosed as the Administrative Fee in accordance with AAA's Standard Fee Schedule. Relief sought includes, but is not limited to, attorneys' fees, interest, and

---

[1] As explained in the attached correspondence, we believe the Company's deadline for filing its demand is on or about April 27, 2016 absent a response from the Fund to the Company's October 30 request for review. In an abundance of caution, however, we are filing this demand now to preserve the Company's rights in the event the Fund asserts that an earlier deadline to file this demand is applicable.



**Akin Gump**
STRAUSS HAUER & FELD LLP

American Arbitration Association
October 30, 2015
Page 2

arbitration costs. The Company contends that the Fund is liable for one half of the fees associated with this arbitration and demands payment of same. The Company's payment of the initial filing fee here does not waive this claim but is merely undertaken to initiate the arbitration process and preserve all of its rights thereto.

The Company requests that the list of arbitrators provided include only independent, full-time arbitrators who do not currently represent any pension funds, union, or employers. The Fund's documents state that the arbitration shall be conducted in Chicago, Illinois. We estimate that the time needed for the arbitration hearing is two to three days.

Please note that the Company is initiating this arbitration pursuant to the AAA's Multiemployer Pension Plan Arbitration Rules for Withdrawal Liability Disputes. The PBGC approved a prior version of the AAA's procedures as an alternative arbitration procedure under 29 C.F.R. § 4221.14. However, the PBGC has not approved the recent modifications to the AAA's procedures, so there is some doubt as to whether these revised procedures continue to qualify under PBGC regulations. Thus, the Company reserves the right to remove this dispute to a different forum under approved procedures, should that be appropriate.

Sincerely,

Elizabeth Cyr

Enclosures

cc:     Trustees of the Central States, Southeast and Southwest Areas
                Pension Fund c/o Mr. Christopher R. Brown
        Thomas Nyhan, Esq.
        James Condon, Esq.
        Michel Manley, Esq
        David Laborde
        J. Patrick Tielborg, Esq.
        Eric D. Field, Esq.
        Midwest Underground, Inc.

EXHIBIT

A



**CENTRAL STATES PENSION FUND**

RECEIVED
MAR 17 2014
BY:

March 14, 2014

**VIA UPS NEXT DAY DELIVERY**
# 1Z 395 1X9 01 9481 8066

Mr. Larry Ernst
President
Midwest Underground, Inc.
3150 5th Avenue
East Moline, IL 61244

RE:     NOTICE AND DEMAND FOR PAYMENT OF WITHDRAWAL LIABILITY
        K & M EQUIPMENT, INC. / MIDWEST UNDERGROUND, INC.
        ASSESSMENT NO.: 4249450-WL140020-01
        WITHDRAWN ACCOUNT NO.: 5418000-0100

Dear Mr. Ernst:

This is a demand for payment of withdrawal liability incurred as a result of a permanent cessation of contributions to Central States, Southeast and Southwest Areas Pension Fund (the "Fund") by the above captioned business on behalf of some, or all, of its bargaining unit employees. This demand is made pursuant to Section 4219 of the Employee Retirement Income Security Act of 1974, as amended (29 U.S.C. 1399 (b)), and applies equally to all members of any controlled group of trades or businesses, as defined in Section 414(c) of the Internal Revenue Code, of which the above captioned business is a member.

The total amount of such withdrawal liability is $1,961,713.07.

Please make your check payable to Central States Southeast and Southwest Areas Pension Fund (please write the assessment number on your check) and forward it to the address as follows:

                CENTRAL STATES WITHDRAWAL LIABILITY
                        Department 10291
                        Palatine, Illinois 60055-0291

If you would prefer to utilize Electronic Funds Transfer ("Wire Transfer"), the following is the Fund's account information:
                        BNY Mellon, N.A.
                American Banking Association Number: 043-000-261
                        Account No. 000093-2289
                Beneficiary: Central States Pension Fund

At your option, the withdrawal liability may be amortized and paid in monthly installments according to a minimum required monthly payment schedule in which payments are due on the first day of each month in the amount of $15,061.22 commencing on April 1, 2014 and ending on January 1, 2034, with a final payment in the amount of $1,830.14 due on February 1, 2034. No penalty, interest or amortization charges will be applied if payment of the entire withdrawal liability is received by this office on or before April 1, 2014.

Mr. Larry Ernst
March 14, 2014
Page Two

Subject to applicable regulations, if any payment of withdrawal liability is not made when due and such payment plus delinquency charges is not made within sixty (60) days after receiving written notice from the Fund of such delinquency, the Fund may require immediate payment of the remaining balance of the withdrawal liability plus delinquency charges accrued from the due date of the first payment which was not timely made.

Enclosed herewith are documents as follows:

1. A copy of the withdrawal liability calculation;

2. A set of remittance notices to be included with your monthly installments; and

3. A copy of the Fund's procedure governing review of any items relating to the determination and calculation of withdrawal liability, the minimum required payment schedule, and the resolution of disputes regarding withdrawal liability.

Sincerely,

Christopher R. Brown
Department Manager
Collections Division

CB: PCS-notice and demand letter
Enclosures

Controlling Employer Name:     K & M Equipment, Inc.
Assessment Number:     4249450-WL140020-01

Withdrawn Company Name:     Midwest Underground, Inc.

Type of Calculation:     2012 Partial Withdrawal

Date Prepared:     March 14, 2014

**Section I - Pre-1980 Pool**

a) All Employers' Contributions
      (1975 - 1979)

| Year | Contributions | CBUs |
|---|---|---|
| 1975 | 0.00 | 0.00 |
| 1976 | 0.00 | 0.00 |
| 1977 | 0.00 | 0.00 |
| 1978 | 0.00 | 0.00 |
| 1979 | 0.00 | 0.00 |
| Total | 0.00 | |

b) All Employers' Contributions (1975 - 1979)     1,993,217,854

c) Allocation Fraction     0.0000000000

d) Unamortized 12/31/79 UVB     0.00

e) Pre-1980 Pool Liability     0.00

**Section II - Post-1979 Pool**

a) Withdrawn Employer's Contributions
      Last 10 Years

| Year | Contributions | CBUs |
|---|---|---|
| 2002 | 0.00 | 0.00 |
| 2003 | 0.00 | 0.00 |
| 2004 | 10,880.00 | 85.00 |
| 2005 | 25,124.00 | 198.00 |
| 2006 | 27,641.00 | 215.00 |
| 2007 | 82,632.80 | 498.45 |
| 2008 | 116,261.60 | 755.40 |
| 2009 | 89,109.00 | 556.40 |
| 2010 | 190,924.32 | 1,051.20 |
| 2011 | 253,885.48 | 1,370.70 |
| Total | 796,458.20 | 4,730.15 |

b) All Employers' Contributions (Last 10 years)     6,507,153,192

c) Allocation Fraction     0.0001223973

d) Net Change in UVB (12/31/11)     22,496,536,285

e) Post-1979 Pool Liability     2,753,516.06

**Section III - Adjustments to Liability**

a) Unadjusted Liability                                2,753,516.06

b) De Minimis Rule                                            0.00

c) Prior Assessment(s) Credit                                 0.00

d) Partial Prorate                                       791,802.48

e) Section 4225 Limitations                                   0.00

f) Adjusted Liability                                  1,961,713.58

**Section IV - Partial Prorate**

a) CBUs in Next Year                                       243.40

b) 5-Year Average (CBUs)

| Year | CBUs |
|------|------|
| 2007 | 498.45 |
| 2008 | 755.40 |
| 2009 | 556.40 |
| 2010 | 1,051.20 |
| 2011 | 1,370.70 |
| Total | 4,232.15 |

    5-Year Average                              846.43

c) Prorate Fraction                                    0.7124394908

d) Remaining Liability                                 2,753,516.06

e) Partial Prorate                                       791,802.48

**Section V - Payment Schedule**

a) High Contribution Rate (Weekly Rate Basis)             254.00

b) 3-Year Average CBUs

| Year | CBUs |
|------|------|
| 2009 | 556.40 |
| 2010 | 1,051.20 |
| 2011 | 1,370.70 |
| Total | 2,978.30 |

    3-Year Average                              992.77

c) Partial Prorate Fraction                            0.7124394908

d) Annual Payment                                        179,650.86

e) Monthly Payment Amount                                15,061.22

f) Amortization Interest Rate                                 7.5%

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS

**Employer : K & M EQUIPMENT INC - 4249450**

**Pension Fund**

**PERIOD : 12/30/2001 - 12/31/2011**

**Controlled Group as of : 12/29/2012**

## PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - SUMMARY

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| *4249450 - K & M EQUIPMENT INC* | | | | | | | |
| | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $10,880.00 | 0 | 0 | 425 | 0.00 | 85.00 |
| | 2005 | $25,124.00 | 41 | 0 | 785 | 0.00 | 198.00 |
| | 2006 | $27,641.00 | 35 | 0 | 900 | 0.00 | 215.00 |
| | 2007 | $82,632.80 | 6 | 0 | 1220 | 9,938.00 | 498.45 |
| | 2008 | $116,261.60 | 10 | 0 | 3727 | 0.00 | 755.40 |
| | 2009 | $89,109.00 | 26 | 0 | 2652 | 0.00 | 566.40 |
| | 2010 | $190,924.32 | 0 | 0 | 2047 | 25,672.08 | 1,051.20 |
| | 2011 | $253,885.48 | 10 | 0 | 2019 | 38,276.03 | 1,370.70 |
| *Totals for Employer:* | | $796,458.20 | 128 | 0 | 13775 | 73,886.11 | 4,730.15 |

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS

Employer : K & M EQUIPMENT INC - 4249450

Pension Fund

PERIOD : 12/30/2001 - 12/31/2011

Controlled Group as of : 12/29/2012

## PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| 4249450 - K & M EQUIPMENT INC | | | | | | | |
| 4249450 - 0100 - 00371A | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| K & M EQUIPMENT INC | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $10,880.00 | 0 | 0 | 425 | 0.00 | 85.00 |
| | 2005 | $20,096.00 | 0 | 0 | 785 | 0.00 | 157.00 |
| | 2006 | $23,040.00 | 0 | 0 | 900 | 0.00 | 180.00 |
| | 2007 | $27,698.50 | 0 | 0 | 998 | 0.00 | 199.60 |
| | 2008 | $46,830.00 | 0 | 0 | 1512 | 0.00 | 302.40 |
| | 2009 | $52,811.80 | 0 | 0 | 1622 | 0.00 | 324.40 |
| | 2010 | $48,136.80 | 0 | 0 | 1369 | 0.00 | 273.80 |
| | 2011 | $49,519.00 | 0 | 0 | 1308 | 0.00 | 261.60 |
| 4249450 - 0100 - 00371B | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| K & M EQUIPMENT INC | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $2,812.80 | 0 | 0 | 96 | 0.00 | 19.20 |
| | 2008 | $2,292.20 | 0 | 0 | 73 | 0.00 | 14.60 |
| | 2009 | $3,401.00 | 0 | 0 | 106 | 0.00 | 21.20 |
| | 2010 | $8,071.20 | 0 | 0 | 227 | 0.00 | 45.40 |
| | 2011 | $13,024.80 | 0 | 0 | 342 | 0.00 | 68.40 |

As of date : 03/14/2014

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS

Employer : K & M EQUIPMENT INC - 4249450
Pension Fund
PERIOD : 12/30/2001 - 12/31/2011
Controlled Group as of : 12/29/2012
PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| 4249450 - K & M EQUIPMENT INC | | | | | | | |
| 4249450 - 0100 - 00722A | | | | | | | |
| K & M EQUIPMENT INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $5,028.00 | 41 | 0 | 0 | 0.00 | 41.00 |
| | 2006 | $4,070.20 | 31 | 0 | 0 | 0.00 | 31.00 |
| | 2007 | $796.20 | 6 | 0 | 0 | 0.00 | 6.00 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2011 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| Total for Employer: | | $318,508.50 | 78 | 0 | 9763 | 0.00 | 2030.60 |
| 5418000 - 0100 - 00135A | | | | | | | |
| MIDWEST UNDERGROUND INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2008 | $918.00 | 10 | 0 | 0 | 0.00 | 10.00 |
| | 2009 | $2,430.60 | 26 | 0 | 0 | 0.00 | 26.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |

As of date : 03/14/2014

CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS
Employer : K & M EQUIPMENT INC - 4249450
Pension Fund
PERIOD : 12/30/2001 - 12/31/2012
Controlled Group as of : 12/29/2012
PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| 4249450 - K & M EQUIPMENT INC | | | | | | | |
| 5418000 - 0100 - 00135A | 2011 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| MIDWEST UNDERGROUND INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| 5418000 - 0100 - 00135B | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| MIDWEST UNDERGROUND INC | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2011 | $809.20 | 7 | 0 | 0 | 0.00 | 7.00 |
| 5418000 - 0100 - 00179A | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| MIDWEST UNDERGROUND INC | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |

As of date : 03/14/2014

Page 3 of 9

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS
Employer : K & M EQUIPMENT INC - 4249450
Pension Fund
PERIOD : 12/30/2001 - 12/31/2011
Controlled Group as of : 12/29/2012
## PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| *4249450 - K & M EQUIPMENT INC* | | | | | | | |
| 5418000 - 0100 - 00179A | 2011 | $758.34 | 3 | 0 | 0 | 0.00 | 3.00 |
| MIDWEST UNDERGROUND INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| 5418000 - 0100 - 00346A | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| MIDWEST UNDERGROUND INC | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $34,847.70 | 0 | 0 | 0 | 7,786.00 | 194.65 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2011 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| 5418000 - 0100 - 00371A | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| MIDWEST UNDERGROUND INC | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $3,691.80 | 0 | 0 | 126 | 0.00 | 25.20 |
| | 2008 | $86,221.40 | 0 | 0 | 2142 | 0.00 | 428.40 |
| | 2009 | $30,465.60 | 0 | 0 | 924 | 0.00 | 184.80 |
| | 2010 | $16,032.00 | 0 | 0 | 451 | 0.00 | 90.20 |

## CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS
Employer : K & M EQUIPMENT INC - 4249450
Pension Fund
PERIOD : 12/30/2001 - 12/31/2011
Controlled Group as of : 12/29/2012
PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| 4249450 - K & M EQUIPMENT INC | 2011 | $14,010.00 | 0 | 0 | 369 | 0.00 | 73.80 |
| 5418000 - 0100 - 03871A MIDWEST UNDERGROUND INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| 5418000 - 0100 - 00445A MIDWEST UNDERGROUND INC | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
|  | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
|  | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
|  | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
|  | 2007 | $12,573.00 | 0 | 0 | 0 | 1,980.00 | 49.50 |
|  | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
|  | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
|  | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
|  | 2011 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| 5418000 - 0100 - 00455A MIDWEST UNDERGROUND INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
|  | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
|  | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
|  | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
|  | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
|  | 2007 | $412.80 | 0 | 0 | 0 | 172.00 | 4.30 |
|  | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
|  | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
|  | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |

As of date : 03/14/2014

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS
## Employer : K & M EQUIPMENT INC - 4249450
### Pension Fund
PERIOD : 12/30/2001 - 12/31/2011
Controlled Group as of : 12/29/2012
## PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| 4249450 - K & M EQUIPMENT INC | | | | | | | |
| 5418000 - 0100 - 00455A | 2011 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| MIDWEST UNDERGROUND INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| 5418000 - 0100 - 00491A | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| MIDWEST UNDERGROUND INC | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2011 | $3,755.73 | 0 | 0 | 0 | 920.52 | 23.01 |
| 5418000 - 0100 - 00541A | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| MIDWEST UNDERGROUND INC | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |

As of date : 03/14/2014

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS

Employer : K & M EQUIPMENT INC - 4249450

Pension Fund

PERIOD : 12/30/2001 - 12/31/2011

Controlled Group as of : 12/29/2012

## PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| 4249450 - K & M EQUIPMENT INC | | | | | | | |
| 5418000 - 0100 - 00541A MIDWEST UNDERGROUND INC | 2011 | $1,734.30 | 0 | 0 | 0 | 423.00 | 10.58 |
| 5418000 - 0100 - 00585A MIDWEST UNDERGROUND INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $118,189.32 | 0 | 0 | 0 | 25,582.08 | 639.55 |
| | 2011 | $167,482.01 | 0 | 0 | 0 | 38,251.51 | 905.29 |
| 5418000 - 0100 - 00600A MIDWEST UNDERGROUND INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |

As of date : 03/14/2014

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS
## Employer : K & M EQUIPMENT INC - 4249450
### Pension Fund
PERIOD : 12/30/2001 - 12/31/2011
Controlled Group as of : 12/29/2012
## PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T1_-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| *4249450 - K & M EQUIPMENT INC* | | | | | | | |
| 5418000 - 0100 - 00600A | | | | | | | |
| MIDWEST UNDERGROUND INC | 2011 | $1,820.40 | 0 | 0 | 0 | 444.00 | 11.10 |
| 5418000 - 0100 - 00682A | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| MIDWEST UNDERGROUND INC | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2011 | $971.70 | 0 | 0 | 0 | 237.00 | 5.93 |
| 5418000 - 0100 - 00722B | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| MIDWEST UNDERGROUND INC | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $530.80 | 4 | 0 | 0 | 0.00 | 4.00 |
| | 2007 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |

As of date : 03/14/2014

CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS
Employer : K & M EQUIPMENT INC - 4249450
Pension Fund
PERIOD : 12/30/2001 - 12/31/2011
Controlled Group as of : 12/29/2012
PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-TL-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| *4249450 - K & M EQUIPMENT INC* | | | | | | | |
| 5418000 - 0100 - 00722B | 2011 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| MIDWEST UNDERGROUND INC | 2002 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| 5418000 - 0100 - 00916A | 2003 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| MIDWEST UNDERGROUND INC | 2004 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2005 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2006 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2007 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2008 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2009 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| | 2010 | $495.00 | 0 | 0 | 0 | 90.00 | 2.25 |
| | 2011 | $0.00 | 0 | 0 | 0 | 0.00 | 0.00 |
| Total for Employer: | | $477,949.70 | 50 | 0 | 4012 | 73886.11 | 2699.55 |
| Total for Employer: | | $796,458.20 | 128 | 0 | 13775 | 73886.11 | 4730.15 |

As of date : 03/14/2014

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS
## Employer : K & M EQUIPMENT INC - 4249450
### Pension Fund
PERIOD : 12/30/2012 - 12/28/2013
Controlled Group as of : 12/28/2013
PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - SUMMARY

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| 4249450 - K & M EQUIPMENT INC | 2013 | $50,297.70 | 0 | 0 | 1217 | 0.00 | 243.40 |
| Totals for Employer: | | $50,297.70 | 0 | 0 | 1217 | 0.00 | 243.40 |

Page 1 of 1

As of date : 03/14/2014

# CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS
## Employer : K & M EQUIPMENT INC - 4249450
### Pension Fund
PERIOD : 12/30/2012 - 12/28/2013
Controlled Group as of : 12/28/2013
PAST CONTRIBUTIONS FOR EMPLOYER LIABILITIES - DETAIL

| EMPLOYER NAME AND E-T-L-C | Year | Amount | Weeks | Casual | Days | Hours | CBUs |
|---|---|---|---|---|---|---|---|
| 4249450 - K & M EQUIPMENT INC | | | | | | | |
| 4249450 - 0100 - 00371A K & M EQUIPMENT INC | 2013 | $34,948.50 | 0 | 0 | 845 | 0.00 | 169.00 |
| 4249450 - 0100 - 00371B K & M EQUIPMENT INC | 2013 | $15,349.20 | 0 | 0 | 372 | 0.00 | 74.40 |
| Total for Employer: | | $50,297.70 | 0 | 0 | 1217 | 0.00 | 243.40 |
| Total for Employer: | | $50,297.70 | 0 | 0 | 1217 | 0.00 | 243.40 |

As of date : 03/14/2014

EXHIBIT

B



ELIZABETH CYR
202.887.4518/fax: 202.887.4288
ecyr@akingump.com

October 30, 2015

**VIA OVERNIGHT DELIVERY**

Trustees of the
Central States Southeast and
Southwest Areas Pension Fund
c/o Mr. Christopher R. Brown
9377 West Higgins Road
Rosemont, IL 60018-4938

     Re:   Request for Review of Notice and Demand For Payment of Withdrawal Liability
           K&M Equipment, Inc. / Midwest Underground, Inc.
           Assessment No. 4249450 – WL 140020-01
           Withdrawn Account Nos. 5418000-0100

To Trustees of the Fund:

     We serve as counsel to Midwest Underground, Inc. ("MWU") and all members of any controlled group of trades or business, as defined in Section 4001(b)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") (collectively, the "Company"). MWU is a member of the Pipe Line Contractors Association ("PLCA").

     In a letter dated March 14, 2014, Mr. Christopher R. Brown, on behalf of the Central States, Southeast and Southwest Areas Pension Fund (the "Fund"), asserted that the Company owes a total of $1,961,713.07 to the Fund as the result of a partial withdrawal from the Fund (the "Demand").

     As of the date of the Demand, MWU was a counter-claimant in the related litigation *Michels et al. v. Central States, Southeast and Southwest Areas Pension Fund, et al.* pending in federal court. The PLCA, on behalf of its approximately 75 members, was also, at all relevant times, a party in the case. As you are well aware, the PLCA, on behalf of all of its members, sought a declaratory judgment that the obligation to contribute to the Fund for all PLCA members terminated in 2011 such that all PLCA members withdrew from the Fund at that time. The Fund filed counterclaims against more than 30 PLCA members, including MWU, seeking to collect allegedly delinquent contributions for post-2011 periods. On September 2, 2015 the U.S.



**Akin Gump**
STRAUSS HAUER & FELD LLP

Trustees of the
Central States Southeast and
Southwest Areas Pension Fund
October 30, 2015
Page 2

Court of Appeals for the Seventh Circuit resolved the dispute in PLCA's favor finding that the actions taken by PLCA members, including MWU, in November 2011 were sufficient to terminate the obligation of those employers to contribute to the Fund.

Given that the primary issue in dispute in *Michels* was the date that PLCA members, including MWU, withdrew from the Fund – which is also a significant and material basis for review of the Demand (as set out in detail below) – the statutory deadlines under Sections 4219 and 4221 of ERISA were clearly tolled during the pendency of the *Michels* litigation and remained tolled until the dispute was meaningfully resolved on September 2, 2015. Thus, the Company's request for review is due December 1, 2015.[1]

The Company has been making the payments under the schedule set forth in the Demand, but contests the amount of the assessment on several grounds, as summarized below. Pursuant to Section 4219(b)(2) of ERISA, we hereby submit this written request that the Fund review its determination, including, but not limited to, the specific matters outlined below. We also request additional information necessary to further assess the Fund's determination. Note that this request for review is based on the factual record now available to the Company, and additional factual development may reveal additional issues. In any case, however, our failure to request review of any issues does not in any way constitute a waiver of our right to raise such issues at a later point in time.

1. **Withdrawal Date.** The 2012 date of withdrawal used by the Fund to calculate the Demand is erroneous and in direct conflict with the clear and unambiguous holding of the Seventh Circuit in *Michels*. As determined by the Court, the Fund's use of a 2012 withdrawal date was arbitrary and capricious and resulted in a greatly overstated amount of withdrawal liability due from the Company. The Company delivered proper written notice to the Fund on November 16, 2011 that its obligation to contribute to the Fund had ceased on November 15, 2011, pursuant to its agreement with the Union. This notice was delivered in accordance with the documents governing the Fund and all applicable rules of the Fund. As a result, the Company withdrew from the Fund in November 2011, consistent with the Seventh Circuit's ruling, and its withdrawal liability must be recalculated based upon the Fund's unfunded vested benefits (reduced as provided below), employer contributions and other data as of December 31, 2010 (we estimate that using the correct 2011 withdrawal date reduces the Company's withdrawal liability significantly). The Company hereby requests such recalculation and asserts

---

[1] Notwithstanding the above, we are simultaneously submitting the Company's demand for arbitration to AAA so as to ensure a timely demand under any tolling scenario.



Trustees of the
Central States Southeast and
Southwest Areas Pension Fund
October 30, 2015
Page 3

that the full amount of all payments made to date should be credited to the recalculated principal with a revised payment schedule based on that amount.

2. **Statutory Basis for the Partial Withdrawal.** The Fund has failed to provide any explanation as to the statutory basis on which it determined that a partial withdrawal occurred pursuant to Section 4205 of ERISA. The Company hereby requests an explanation as to the basis for the Fund's assessment of a partial withdrawal as contained in the Demand and denies that a partial withdrawal has occurred under any statutory provision.

3. **Application of the Building and Construction Industry Rule.** Section 4203 of ERISA provides rules specific to determining whether an employer engaged in the building and construction industry has completely withdrawn from a multiemployer pension plan (the "Construction Rule"). Section 4208(d) of ERISA provides a rule for determining whether an employer covered by the Construction Rule is liable for partial withdrawal liability (the "Construction Partial Rule"). The Demand fails to state whether the Company is covered by the Construction Rule and, if so, why the Construction Partial Rule does not exempt the Company from partial withdrawal liability. The Company hereby requests an explanation as to whether the Fund believes the Construction Rule applies to the Demand and, if so, why the Fund believes the Construction Partial Rule did not exempt the Company from partial withdrawal liability. Additionally, the Company requests all documents related to the application of the Construction Partial Rule for other employers that contribute or have contributed to the Fund regardless of whether the application of such rule exempted the employer from partial withdrawal liability or otherwise. Please also provide all arbitration decisions that involve any alleged partial withdrawals from the Fund.

4. **Disproportionate Assessment.** It is a violation of applicable constitutional principles that the Company's purported "fair share" of the Fund's unfunded vested benefits in the form of the withdrawal liability claimed in the Demand, particularly when added to the contributions the Company has already made to the Fund, is so much greater than either (1) any harm the Company may have caused the participants or the Fund or (2) any benefits the Fund will provide to the employees on behalf of whom the Company made those contributions. We believe that these facts support a valid constitutional challenge to the Fund's mechanical application of the withdrawal liability rules. *See, e.g., Connolly v. PBGC,* 106 S.Ct. 1018, 1028 (1986) (O'Connor, J., concurring) (in certain situations application of MPPAA "may be arbitrary and irrational in the absence of any connection between the employer's conduct and some detriment to the employee.").



**Akin Gump**

STRAUSS HAUER & FELD LLP

Trustees of the
Central States Southeast and
Southwest Areas Pension Fund
October 30, 2015
Page 4

5.   **Use of Segal Blended Interest Rate.**  The Fund uses the "Segal Blended Interest Rate" to value its liabilities.  The rate is a blend of the Fund's funding rate, *i.e.* the interest rate it uses for ERISA liability purposes and the rate or rates the PBGC uses to value plan liabilities upon plan termination.  The result is a rate that is lower than the Fund's funding rate and thus overstates the Fund's liabilities (and the Company's withdrawal liability).  The Fund should use the same rate for estimating its future liabilities for this purpose as it does for assuming future asset growth.  The Company's withdrawal liability should be recalculated valuing the Fund's liabilities using the Fund's funding rate.

6.   **Benefit Reductions Upon Withdrawal.**  The Fund has notified employers that it will reduce the vested benefits of participants upon an employer's withdrawal, but that such benefit reductions will not reduce the Fund's unfunded vested benefits or the Company's withdrawal liability.  We understand that pursuant to this policy the Fund has cut back the vested benefits of participants of many employers that have withdrawn from the Fund, but has not reduced the Fund's liabilities to reflect those cutbacks.  Please provide the Company a calculation of the vested liabilities that are included in the withdrawal liability calculation that reflects these benefit cutbacks.  Also, indicate how many of these affected participants have retired or otherwise terminated employment so that their reduced benefits have become fixed.  If our understanding is accurate, the Company's withdrawal liability should be recalculated to eliminate the liabilities associated with such benefit reductions.  These benefits are not considered non-forfeitable benefits under ERISA and, as a result, such benefits must be eliminated from the withdrawal liability calculations.

7.   **Other Forfeitable Benefits.**  The Fund should eliminate from the withdrawal liability calculation of the Company any death, disability, early retirement subsidy and other adjustable benefits that are not considered non-forfeitable benefits under ERISA.

8.   **Contribution History of Withdrawn Employers.**  In preparing the Demand, the Fund has eliminated from the "All Employers' Contributions (Last 10 years)" calculations the contribution history of employers that are alleged to have withdrawn from the Fund.  The Company cannot tell from the information provided to it whether the contribution histories of significant contributing employers, such as Yellow Freight, Hostess, Allied and others have been eliminated from the calculations and, if so, when they were eliminated.  To establish whether and, if so, how these contributions have been eliminated from the calculations, the Company hereby requests such information and reserves the right to request a further recalculation of its withdrawal liability if such contribution histories have been improperly treated.



**Akin Gump**

STRAUSS HAUER & FELD LLP

Trustees of the
Central States Southeast and
Southwest Areas Pension Fund
October 30, 2015
Page 5

9.    **Payment Schedule Interest Rate.**  The Fund used an interest rate of 7 ½% to determine the Company's multi-year payment schedule. This is, by current market standards, a very high rate, particularly in light of the fact that the Fund uses the lower Segal Blended Interest Rate, as noted above, to determine the Company's withdrawal liability.  The Company believes the Fund is acting arbitrarily in varying its selection of interest rate assumptions to suit its own best interest.

10.    **Offers of Reduced Risk.**  The Company requests that the Fund provide it with a copy of any offer made to induce an employer to continue as a contributing employer in the Fund by providing for a temporary suspension or reduction of contributions or other relief (*e.g.*, in exchange for a reduction in future withdrawal liability).

11.    **Contribution Rate.**  In determining the Company's Payment Schedule in the Demand, the Fund inaccurately determined that the Company's "Highest Contribution Rate (Weekly Rate Basis)" was $254.00.  This contribution rate exceeds the highest contribution rate contained in the Company's records.  Please provide the basis on which you determined this was the Company's highest contribution rate (weekly rate basis).

12.    **Inaccurate Contribution History.**  The contribution history used by the Fund to prepare the Demand materially differs from the contribution history contained in the Company's records, including but not limited to, the inclusion of disputed audit findings.  Please provide the basis on which you determined the Company's contribution history and verify the accuracy of the contribution information upon which the Fund relied.

We look forward to your prompt response to our request for review.  We reserve all rights to supplement the issues listed herein related to the withdrawal liability calculation in the Demand based upon the discovery of additional facts including, but not limited to, our review of additional documents and information provided by the Fund.

Sincerely yours,

Elizabeth Cyr

cc:    J. Patrick Tielborg, Esq.
Eric Field, Esq.
Thomas Nyhan, Esq.
James Condon, Esq.
Midwest Underground, Inc.

# EXHIBIT
# C



# Akin Gump

STRAUSS HAUER & FELD LLP

ELIZABETH CYR
202.887.4518/fax: 202.887.4288
ecyr@akingump.com

October 30, 2015

**VIA OVERNIGHT DELIVERY**

Trustees of the
Central States Southeast and
Southwest Areas Pension Fund
c/o Mr. Christopher R. Brown
9377 West Higgins Road
Rosemont, IL 60018-4938

     Re: Demand for Arbitration

To Trustees of the Fund:

     On behalf of our client, Midwest Underground, Inc. and all members of any controlled group of trades or business as defined in Section 4001(b)(1) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") (collectively the "Company"), we hereby submit the Company's Demand for Arbitration in its dispute with the Central States, Southeast and Southwest Areas Pension Fund (the "Fund") over the Fund's determination of the Company's withdrawal liability. The Company's Demand for Arbitration with attached exhibits is enclosed. The Company has submitted two copies of the enclosed Demand for Arbitration with the attached exhibits and filing fee to the Illinois regional office of the American Arbitration Association.

                          Sincerely,

                          Elizabeth Cyr

Enclosures

cc:   Thomas Nyhan, Esq.
     James Condon, Esq.
     Michel Manley, Esq.
     David Laborde
     J. Patrick Tielborg, Esq.
     Midwest Underground, Inc.

Akin, Gump, Strauss, Hauer & Feld, L.L.P.

| | | Check #: | 424597 |
| --- | --- | --- | --- |
| Vendor ID: 3292 | AMERICAN ARBITRATION ASSOCIAT(130429745) | Check Date: | 10/30/2015 |

| Invoice Number | Invoice Date | Invoice Amount |
| --- | --- | --- |
| AM102915 | 10/29/2015 | 8,200.00 |
| | Total | 8,200.00 |

PL5908L Another Quality Product From Altec (800) 333-5180 (949) 727-1248 Fax (949) 727-1253

**DOCUMENT HAS A COLORED BACKGROUND. SECURITY FEATURES LISTED ON BACK.**

AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
DISBURSEMENT ACCOUNT
A REGISTERED LIMITED LIABILITY PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS
1333 NEW HAMPSHIRE AVENUE, N.W.
WASHINGTON, DC 20036
(877) 395-2546

Citi Private Bank
1101 Pennsylvania Avenue, NW
Washington, DC 20004

Check No.    424597

15-7011/2540

DATE    10/30/2015

AMOUNT OF CHECK

$    ******8,200.00

*EIGHT THOUSAND TWO HUNDRED AND 00/100 DOLLARS*

PAY

VOID AFTER 6 MONTHS

TO THE
ORDER OF    AMERICAN ARBITRATION ASSOCIATION

150 N MICHIGAN AVE SUITE 3050
CHICAGO, IL  60601

AUTHORIZED SIGNATURE

⑆424597⑈ ⑆254070116⑈    9250397951⑈

# EXHIBIT G



**Akin Gump**

STRAUSS HAUER & FELD LLP

**ELIZABETH CYR**
202.887.4518/fax: 202.887.4288
ecyr@akingump.com

March 6, 2014

**VIA EMAIL**

Mr. Norman Brand
150 Lombard Street, Suite 3
San Francisco, CA 94111
nb@normbrand.com

      Re:    Joint Request to Stay Arbitrations

Dear Mr. Brand:

You have recently been invited to serve as the Arbitrator in an additional matter involving Central States Southeast and Southwest Areas Pension Fund and a member company of the Pipe Line Contractors Association, a multi-employer association represented by Akin Gump Strauss Hauer & Feld, LLP. In each of these cases, a central issue in dispute is the date of the employer's withdrawal from the Fund. As you have been previously informed, this issue is now pending in federal court and, as such, the parties have agreed to hold all related arbitrations in abeyance pending a ruling by the Seventh Circuit Court of Appeals.[1]

To ensure the efficient administration of these matters, the parties jointly request that the following case be stayed until further notice:

- Case No. 51 621 00076 14 - Pe Ben USA, Inc. vs. Central States SE & SW Areas Pension Fund

Similar requests have been submitted and/or ordered in the following cases for the reasons described above:

- Case No. 51 621 01301 13 - Letourneau Products Manufacturing Corporation vs. Central States SE & SW Areas Pension Fund
  - Initial status conference cancelled based on February 6 request to stay

- Case No. 51 621 01310 13 - ProFoam, LLC and Terra Restoration Services, LLC vs. Central States SE & SW Areas Pension Fund

---

[1] The case in question is *Michels Corp. v. Central States Southeast and Southwest Areas Pension Fund, et al.*, Case No. 1:12-cv-04144 (N.D. Ill). The appellate case does not yet have a case number.



**Akin Gump**

STRAUSS HAUER & FELD LLP

Mr. Norman Brand
March 6, 2014
Page 2

o   Initial status conference cancelled based on February 6 request to stay

- Case No. 51 621 01298 13 - Laney Directional Drilling Company vs. Central States SE & SW Areas Pension Fund
  o   Initial status conference cancelled based on February 6 request to stay

- Case No. 51 621 01309 13 - Continental Energy Services, LLC vs. Central States SE & SW Areas Pension Fund
  o   Initial status conference cancelled based on informal request to stay

- Case No. 51 621 1300 13 – Brandenburg Drainage, Inc. vs. Central States SE & SW Areas Pension Fund
  o   Initial status conference cancelled based on informal request to stay

- Case No. 51 621 1203 13 - Blackwell Enterprises, Inc. vs. Central States SE & SW Areas Pension Fund
  o   Ordered to be held in abeyance on January 10, 2014

- Case No. 51 621 1040 13 - Big Inch Fabricators & Construction, Inc. vs. Central States SE & SW Areas Pension Fund
  o   Ordered to be held in abeyance on November 20, 2013

Upon a ruling from the Seventh Circuit Court of Appeals, the parties will notify AAA for further processing of these matters. Please do not hesitate to contact the parties if you require additional information.

Thank you for your consideration of this matter.

Sincerely,

Elizabeth Cyr

cc:   Timothy Reuter
      Andrew Sprau
      Eric Field
      Janice Holdinski