UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION FUND;
and ARTHUR H. BUNTE, JR., as Trustee,

    Plaintiffs,

    v.

K&M EQUIPMENT, INC., an Illinois
corporation, and MIDWEST
UNDERGROUND, INC., an Illinois
corporation,

    Defendants.

No. 15 C 11586
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' cross-motions for Summary Judgment. Plaintiffs seek a declaration that Defendants K&M Equipment, Inc. ("K&M") and Midwest Underground, Inc. ("Midwest") (collectively "Defendants") have failed to timely initiate arbitration under the Multiemployer Pension Plan Amendments Act ("MPPAA") and have therefore waived their right to arbitrate this matter. Plaintiffs further seek an injunction compelling Defendants to dismiss the pending arbitration before the American Arbitration Association. For the following reasons, Plaintiffs' Motion is granted with respect to summary judgment and denied with respect to the injunction. Defendant's Motion is denied.

**I. BACKGROUND**

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund and its trustee, Arthur H. Bunte, Jr. (collectively "Plaintiffs" or "the Fund") bring this Employee Retirement Income Security Act of 1974 ("ERISA") action against Defendants. The Fund is a multiemployer pension plan within the meaning of ERISA. K&M and Midwest (collectively "the Midwest

1

Controlled Group") are a "group of trades or businesses under common control"—a single employer for purposes of determining and assessing withdrawal liability under ERISA.

Under the MPPAA, an employer that withdraws from a multiemployer pension plan must pay "withdrawal liability," amounting to the "difference between the present value of vested benefits and the current value of the plan's assets." *Cent. States, Se. & Sw. Areas Pension Fund v. Hunt Truck Lines, Inc.*, 43 F. Supp. 2d 942, 944 (N.D. Ill. 1999); *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 217, 106 S.Ct. 1018, 1022 (1986); 29 U.S.C. §§ 1381, 1391. Withdrawal occurs when an employer stops contributing to the plan on behalf of its employees, or incurs "partial" withdrawal by reducing its contributions. 29 U.S.C. §§ 1383, 1385. Once an employer withdraws, the plan must calculate the amount of withdrawal liability owed and send a notice and demand to the employer. 29 U.S.C. §§ 1382, 1399(b)(1). If the employer intends to challenge the withdrawal assessment, it must request a review within 90 days of receiving the notice and demand. 29 U.S.C. § 1399(b)(2)(A). The MPPAA also provides that any remaining disputes between the employer and the plan sponsor regarding the withdrawal liability assessment must be resolved through arbitration, which must be initiated "within a 60-day period after the earlier of—(A) the date of notification to the employer . . . or (B) 120 days after the date of the employer's request . . . The parties may jointly initiate arbitration within the 180-day period after the date of the plan sponsor's demand . . ." 29 U.S.C. § 1401(a)(1). If no arbitration proceeding is initiated by the applicable deadline, arbitration is waived and the withdrawal liability demanded by the plan sponsor becomes due. 29 U.S.C. § 1401(b)(1).

At all relevant times, Midwest was a member of the Pipe Line Contractors Association ("PLCA"), which negotiates industry-wide labor agreements with unions. PLCA and the International Brotherhood of Teamsters ("IBT") belong to an industry-wide collective bargaining agreement known as the National Pipe Line Agreement ("NPLA"). As a PLCA member,

2

Midwest is also bound by the NPLA, which, at the relevant time, required employers to contribute to the Fund on behalf of certain employees.

On November 15, 2011, the PLCA and the IBT entered into an agreement that purported to terminate NPLA employers' obligation to contribute to the Fund. Along with other PLCA members, Midwest notified the Fund in writing on November 16, 2011 that it believed its obligation to contribute to the Fund had terminated. Between November 28, 2011 and December 31, 2011, the PLCA sent eight follow-up letters to the Fund inquiring whether PLCA's members (including but not limited to Midwest) needed to take any further action to formally terminate their obligations to the Fund. Despite these inquiries, the Fund wrote the IBT on January 30, 2012 that the PLCA members had not effectively terminated their obligation to contribute to the Fund as of November 25, 2011. Thus on March 5, 2012, Michels Corporation, a PLCA member, sued the Fund. *See Michels Corp. et al v. Central States, Southeast and Southwest Areas Pension Fund, et al.*, 800 F.3d 411 (7th Cir. 2015). Michels Corporation sought a declaratory judgment establishing the termination of their obligations under the NPLA. PLCA, on behalf of all its members including Midwest, joined the *Michels Corp.* suit on July 26, 2012.

On August 1, 2012, the Fund filed counterclaims against 35 PLCA members including Midwest. The Fund sought to collect the contributions it believed PLCA members still owed from work performed under the NPLA after November 15, 2011. The Fund determined that the Midwest Controlled Group specifically had effected partial withdrawal on or about December 31, 2012. Accordingly, the Fund determined that the Midwest Controlled Group had incurred withdrawal liability of $1,961,713.07. The Fund issued a notice and demand for payment in that amount on March 14, 2014.

On September 2, 2015, the Seventh Circuit held in *Michels Corp.* that the PLCA

3

members' obligation to contribute to the Fund had ceased on November 15, 2011. *Michels Corp.*, 800 F.3d at 421-22. The Midwest Controlled Group then sent two letters to the Fund on October 30, 2015. The first letter requested review of the $1,961,713.07 withdrawal liability calculation, which the Midwest Controlled Group contends was invalidated by the *Michels Corp.* decision. The second letter initiated arbitration of this issue before the American Arbitration Association. That case has been stayed pending the outcome of this litigation.

Prior to the Midwest Controlled Group's arbitration demand, 26 other members of the PLCA, including Michels Corp. itself, had demanded arbitration with the Fund within a 60-day period of the earlier of a) the date of notification to the employer pursuant to ERISA § 4219(b)(2)(B) or b) 120 days after the date of the employer's request pursuant to ERISA § 4219(b)(2)(A). All 26 PLCA-members were also parties to *Michels Corp.*

Plaintiffs filed this lawsuit on December 23, 2015, asserting that Defendants waived their arbitration rights in this matter because they failed to timely arbitrate their claims pursuant to 29 U.S.C. § 1401(a)(1), 29 C.F.R. §§ 4221.3(c), 4221.14, the American Arbitration Association's ("AAA") Multiemployer Pension Plan Arbitration Rules for Withdrawal Liability Disputes, and Appendix E of the Fund's Plan Document. Defendants argue that their participation in the *Michels Corp.* lawsuit equitably tolled the deadline to initiate the arbitration process. This dispute is the sole legal issue in this case.

## II. LEGAL STANDARD

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of triable fact exists only if "the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

I consider the record in the light most favorable to the non-moving party, and I draw all reasonable inferences in the non-movant's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). I will accept the non-moving party's version of any disputed fact, however, only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

### III. DISCUSSION

Plaintiff argues that it is entitled to summary judgment because Midwest failed to timely initiate arbitration under the rules of the MPPAA. This is clearly true on its face. The MPPAA mandates that arbitration is waived unless the parties request a review of the withdrawal liability assessment within 90 days of the notice and demand for payment, and initiate arbitration within a 60-day period of the earlier of a) the date of notification to the employer pursuant to

ERISA § 4219(b)(2)(B) or b) 120 days after the date of the employer's request pursuant to ERISA § 4219(b)(2)(A). 29 U.S.C. § 1399(b)(2)(A); 29 U.S.C. § 1401(a)(1), (b)(1). In this case, it is undisputed that Defendants received the Fund's notice and demand for payment on March 14, 2014, giving them until June 15, 2014 (90 days) to request a review of the withdrawal liability. But Defendants did not submit either a request for review or demand for arbitration until October 30, 2015, over a year past the statutory deadline.

However, Defendants counter that they are entitled to equitable tolling of the deadline for the period in which they were engaged in the *Michels Corp.* lawsuit. For this proposition, Defendant cites two twenty-five-year-old cases in which the Seventh Circuit equitably tolled MPPAA's arbitration deadlines while the withdrawal liability issues at hand were being litigated in court. *Banner Indus., Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 875 F.2d 1285 (7th Cir. 1989); *Trustees of Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Cent. Transp., Inc.*, 888 F.2d 1161, 1164 (7th Cir. 1989) (noting that "the time period for seeking arbitration is equitably tolled by pursuing nonfrivolous litigation in district court."). Defendants argue that because their participation in *Michels Corp.* pre-dated the notice and demand, the clock did not begin to run until the *Michels Corp.* litigation was resolved, shifting the deadline to request review to 90 days after the Seventh Circuit's decision, or December 1, 2015. Defendants contend that even if the Seventh Circuit decision on September 2, 2015 could be considered to have triggered the 60-day arbitration clock, the deadline would still be November 1, 2015. Defendants sent their letter to the Fund requesting review on October 30, 2015 to ensure they would fall within either deadline. Finally, Defendants point out, all PLCA-related arbitrations (including those of the 26 *Michels Corp.* parties who requested arbitration while the lawsuit was pending) were stayed pending the outcome of *Michels Corp.* Therefore, no

progress would have been made on any arbitration that Defendants might have initiated earlier and equitable tolling would not prejudice Plaintiffs.

Defendants' analysis misconstrues the application and purpose of equitable tolling. Equitable tolling is not to be applied frivolously. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1990) ("We should not trivialize the statute of limitations by promiscuous application of tolling doctrines."). To that end, the Supreme Court has laid out a clear and stringent test for the application of equitable tolling, requiring the litigant to establish "two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). This formulation is not a balancing of factors—rather, the litigant must establish both elements in order to merit equitable tolling. *Id.*; *Menominee Indian Tribe of Wisconsin v. U.S.*, 136 S. Ct. 750, 756 (2016) ("[W]e have expressly characterized equitable tolling's two components as "elements," not merely factors of indeterminate or commensurable weight . . . And we have . . . [rejected] requests for equitable tolling where a litigant failed to satisfy one without addressing whether he satisfied the other.").

Here, the parties debate whether Defendants have demonstrated either element, but I consider only the "extraordinary circumstances element," as it is plain that Defendants have not met that prong. It "is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond his control." *Menominee Indian Tribe of Wisconsin*, 136 S. Ct. at 756 (emphasis in original). Here, Defendants have no credible argument that their failure to timely request review and arbitration was beyond their control. Twenty-six other similarly-situated parties to *Michels Corp.* managed to meet the statutory deadline while pursuing their rights in litigation and Defendants offer no reason why they did not or could not do the same.

Defendants counter that their failure to do so has not prejudiced the plaintiff because the other *Michels Corp.* litigants stayed their arbitration by mutual agreement of the parties, and thus none of the arbitrations went forward until *Michels Corp.* was decided. But this argument misses the point of the statute of limitations. "Statutes of limitations are not arbitrary obstacles to the vindication of just claims . . . They protect important social interests in certainty, accuracy, and repose." *Cada*, 920 F.2d at 452-53. The deadline applies regardless of whether or not the opposing party would be prejudiced by a delay in filing. Defendants have not argued that any circumstances, extraordinary or otherwise, prevented them from timely initiating and then staying arbitration, as their co-litigants did. As such, I find that they waived their rights to arbitration in this matter.

Plaintiffs also correctly note that the two cases Defendants cited for the proposition that non-frivolous litigation merits equitable tolling of MPPAA deadlines were later construed very narrowly by the Seventh Circuit. Addressing *Banner* and *Trustees*, the Seventh Circuit concluded, "Both decisions can be questioned, given Congress's evident desire that challenges to withdrawal liability be resolved quickly, [and] given that the employer could pursue his judicial and arbitral remedies simultaneously . . . The two cases should probably be regarded as transitional decisions in which uncertainties about the law made judges hesitate to penalize litigants for having made questionable procedural choices." *Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1377 (7th Cir. 1992). To be sure, *Slotky* is not a perfect analog for the case at bar since in that case the defendant seeking equitable tolling was not simultaneously engaged in litigation. But the Seventh Circuit's observation that an "employer could pursue his judicial and arbitral remedies simultaneously" and its characterization of *Banners* and *Trustee* as "transitional decisions" is fatal to Defendant's claim in this case.

8

I now consider Plaintiff's request to permanently enjoin the Midwest Controlled Group from pursuing arbitration in this matter. To impose a permanent injunction, the movant must show that it has 1) no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied, and 2) some likelihood of success on the merits. If such a showing is made, I weigh the competing harms to the parties and whether any harm to the public interest will arise if an injunction is imposed. *Wheaton Coll. v. Burwell*, 50 F. Supp. 3d 939, 946 (N.D. Ill. 2014), *aff'd,* 791 F.3d 792 (7th Cir. 2015). Here, I have determined Plaintiff's success on the merits in the summary judgment motions before me. However, I do not believe Plaintiffs face irreparable harm without an injunction. My finding that Defendant has waived its arbitration rights strips the arbitrator of his jurisdiction, so the pending arbitration and any future ones cannot go forward even without an injunction. Therefore, Plaintiffs' request for an injunction is denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is granted and Defendant's Motion is denied. Defendant has waived its right to arbitration and the case is resolved in favor of Plaintiffs. Plaintiffs' request for a permanent injunction is denied.

ENTER:

James B. Zagel
United States District Judge

DATE: August 15, 2016